MONCURE, P.,
delivered the opinion of the court.
This is a supersedeas to a judgment of the Circuit court of the city of Richmond in favor of the commonwealth against the plaintiffs in error, Alexander *Scott and others, for $3,318.31, bal-anee of the land, property and capitation taxes of the year 1870, due from the said Alexander Scott, late collector of taxes, &c., for Caroline county, with interest, damages and costs.
The judgment was recovered by motion on a bond of the said plaintiffs in error, the said Scott and his sureties, dated the 13th day of February 1871, in the sum of $30,000, with condition thereunto annexed in these words:
“The condition of the above obligation is such, that whereas the above bound (Alexander Scott) by reason of a vacancy in the office of sheriff of this county, as collector of taxes in pursuance of the act of the general assembly passed February (meaning January) 6, last, the court appointed the said Alexander Scott to be collector of the taxes, levies, and officers’ fees for the present year in this county. Now if the said Alexander Scott shall faithfully discharge the duties of his said office of collector as aforesaid during his continuance in office, then the above obligation to be void, else to remain in full force and virtue. ’ ’
A bill of exceptions was taken by the plaintiffs in error (being the defendants in the court below) to opinions of the court given upon the trial of the cause, in which bill were set out, the facts proved upon the trial.
The grounds of defence, which were relied on in the court below, and which are also the grounds of error relied on in this qourt are: 1st, that the bond is null and void; and, 2dly, that if the bond is valid, the condition of it was fully performed. We will consider these two grounds in their order; and
First, that the bond is null and void.
The order made bj- the County court of Caroline at *the time of the execution of that bond, to wit: on the 13th day of February 1871, is in these words:
“A vacancy having occurred in the office of sheriff as collector of taxes, levies and officers’ fees, by reason of his failure to give the bond required by the act of the general assembly passed on the 6th day of last month, the court appointed Alexander Scott to be collector of the taxes and levies of the last year, and of any officers’ fees which may be placed in his hands for collection, collectible during the present year, and thereupon said Alexander Scott subscribed and took the oaths prescribed by law, and entered into and acknowledged a bond in the penalty of $30,000, conditioned according to law, with James A. Chapman,” &c. (naming them), “as his securities, who verified in solemn form as to their sufficiency. ’ ’
The act passed January 6, 1871, referred to in the said order, is entitled “an act supplemental to the act providing for the collection of the state revenue and county levies for the year 1870.” Acts of Assembly 1870-71, p. 14, chap. 23. It contains four sections. The first enacts, “that the sheriffs of this commonwealth, and other officers heretofore charged with the collec *543 tion of taxes, whose term of office expired on the 31st day of December 1870, are authorized and directed to proceed with the collection of the state revenue and county levies, which have been or may be assessed for the year 1870, in like manner as the same have been heretofore collected: provided, that it shall be the duty of each county and corporation judge to examine the bonds of such sheriff or other officer within his jurisdiction, and if he deem it necessary, require such sheriff or other officer to execute a new bond, in such penalty, and with such securities, as he may deem sufficient: provided, that such penalty shall not be less *'than double the amount which may go into the hands of such sheriff or officer.” The second section need not be set out. The third enacts, that “in the event that any such sheriff or other officer shall fail or neglect to execute the bond provided for in the first or second section, within thirty days from the passage of this act, it shall be the duty of such sheriff or other officer, or of the commissioners of the revenue, in case the books aforesaid shall not have been so delivered, to deliver the same to the treasurers of their counties, cities or towns, after they shall have executed a new bond, in such penalty and with such security as the judge of the county or corporation may deem sufficient: provided, that such penalty shall not be less than double the amount which may go into the hands of such treasurer, who shall then proceed to collect and account for the same in the manner prescribed by the act approved July 11th, 1870, entitled an act prescribing the duties and compensation of county officers.” The fourth section declares that “this act shall be in force from its passage.”
The act referred to in the one last mentioned, which is supplemental thereto, is the act approved April 23, 1870, entitled “ail act in relation to the collection of state, county and town taxes and officers’ fees” — Acts of Assembly, 1869-’70, p. 71, chap. 65. Its first section enacts, that it shall be lawful for the sheriffs, and sergeants, charged with the collection of the public revenue in their respective counties, cities and towns, who were in office on the 26th day of January 1870, to continue to collect the same, and to levy and distrain for the same, as authorized by law, and also for county, city and town levies and officers’ fees : provided, however, that where said officer has not given the bond required by the first section of the act passed *March 5th, 1870, he shall not be authorized to collect, levy or distrain under this act until he shall have executed bond before the County court in such sum, not less than S20,000, as the judge thereof may require, with security deemed good by the court, payable to the commonwealth, and conditioned faithfully to account for and pay over all moneys which may have been or may be collected by him. The second section enacts that “where any sheriff or sergeant shall fail to give the bond re- j ¡ quired by the preceding section, or by the first section of the act of March 5th, 1870, it shall be lawful for him to deliver his uncollected tax tickets for state revenue, and for county, city and town levies, to his. successor in office,” &c.
The act of March 5th, 1870, above referred to, is commonly called the enabling act; and it is entitled, “an act to enable officers now holding offices in Virginia, by military appointment or otherwise, to hold over until their successors are elected or appointed and have duly qualified; to ratify and confirm the official acts of all such officers, and to provide for filling vacancies in the offices of justices and constables.” Acts of Assembly 1869-’70, p. 16, chap. 18. It contains a preamble and thirteen sections. The first section enacts, “that all such officers who are eligible to office under the existing constitution and laws of Virginia, and who qualified on or before the 26th day of January 1870, and none others, be and they are hereby recognized as legal officers of this commonwealth, and authorized to continue to hold their said offices, and to exercise the rights and powers, perform the duties, and enjoy the privileges and emoluments appertaining to the same, as far as they may lawfully do so under the present constitution and laws of this state, and until their successors are appointed or ^'elected and have duly qualified: provided that all officers, of whom bonds are now required by law for the proper discharge of their respective duties, shall give or renew their bonds with good security, in the penalty now provided by law, within thirty days after the passage of this act,” &c. “If any of the officers mentioned in this section shall fail to give the requisite bond within the periods herein fixed, their said offices shall thereupon become vacant. ’ ’ The fourth section, after making a provision in regard to clerks of courts, enacts that “the offices of attorneys for the commonwealth and of sheriffs shall be vacant at the first term of the county courts hereafter held by judges elected under the present constitution in their respective counties ; and such last named judges shall, at the said first term of their respective courts, appoint attorneys for the commonwealth and sheriffs for their respective counties, to continue in office until their successors shall be regularly elected and qualified under the present constitution. The sheriffs and clerks appointed under this section of the act, shall not enter upon the discharge of their respective duties until they shall have given bonds according to law, and if any of the officers mentioned in this section shall fail to give the requisite bond within thirty days after his appointment his said office shall thereupon become vacant, and shall be filled at the same or next term of the court during or after which such vacancy may occur, ’ ’ &c. It is unnecessary' to state the remaining provisions of the act.
The county and corporation courts were reorganized in pursuance of the constitution ¡ under acts approved April 2, 1870. Acts of *544 Assembly, p. 35, chap. 38, and p. 39, chap. 40.
“An act to provide for a general election,” was approved *May 11, 1870. Id. p. 78, chap. 76. The third section enacts that “the term of office of all state, district and county officers, chosen at a general election, shall commence on the first day of January next thereafter, except it be otherwise provided by the constitution or by this act. ’ ’ The twelfth section enacts that “sheriffs, -attorneys for the commonwealth, county treasurers ' and superintendents of the poor shall be chosen by the qualified voters of the respective counties, at the general election in November of the year 1870, and every third year thereafter, and shall hold their offices for the term of three years.” The fifty-ninth section enacts that “the removal of any county, corporation or township officer, from the county, corporation or township in which such officer was elected shall vacate his office; or,, if he fail to qualify and give bond (when a bond is required) in the time prescribed by law for the commencement of his term of office, his office shall, for that cause, be vacant.” The fifty-eighth section provides that when a vacancy occurs in the office of sheriff, county treasurer, &c., the same shall be filled by the judge of the county court of the county in which the vacancy occurs.
“An act prescribing the duties and compensation of county officers” was approved July 11, 1870. Id., p. 257, chap. 179. The first section enacts that the duties, &c., of sheriffs, &c., “shall be the same as are now or may hereafter be prescribed by law, except that the sheriff after the year 1870 shall not collect the state revenue or the county levy, and except,” &c. The second section enacts that “each officer mentioned in *he preceding section, and every other county officer elected in November shall, on or before the first of January next after his election, qualify by taking *the oath of office prescribed by law, ” &c. And the third section enacts that “each officer mentioned in the first section shall, at the time of his qualification, enter into such bond with such condition and in such penalty as may be required by law, with sureties to be approved by the court or judge before whom he qualifies,” &c. Sections from 4 to 33 inclusive, relate to the county treasurer; those from 20 to 33 inclusive, relating to his duty as to revenue. Section 20 enacts that “the county treasurer shall, in the manner hereinafter provided, receive the state revenue, and account for and pay over the same in the manner provided by law for the payment of money into the treasury of the state.”
The foregoing is 'a summary of the acts passed after the adoption of the present constitution, and prior to the 13th of February 1871, the date of the bond on which the judgment in this case was obtained, and it is made with a view of showing the effect which those acts have on the question we are now considering. Alexander Scott, it seems, had been sheriff of the county of Caroline prior to the execution of the said bond, and in 1869. He probably was so when the enabling act was passed. Whether he gave bond under the first section of that act does not appear. He was appointed such sheriff under the fourth section of the act by an order of court made on the 11th of April 1870, and thereupon duly qualified as such by taking the oaths, and executing bond with security as required by law. Both in the order, and in the condition of the bond, it is expressed .that he is to continue in office until his successor shall be duly elected and qualified. At the general election of officers in the county in November 1870, John H. James was elected sheriff, but never qualified. George W. ^Marshall was elected county treasurer, and qualified accordingly. In this state of things, on the 13th day of February 1871 the order of court was made appointing Scott collector of taxes and levies of the year 1870, and he thereupon duly qualified as such by taking the oaths prescribed by law, and entering into bond with security as before mentioned. And the question we are now considering is, whether that bond is valid.
It was evidently entered into, and taken, under the idea (for the order so expressly declares) that a vacancy had occurred in the office of sheriff as collector of taxes, levies and officers’ fees, by reason of the failure of Scott to give the bond required by the act of the general assembly passed on the 6th day of January 1871 before referred to; and also under the idea that the court had the power to fill the vacancy by appointing a collector. Were these views of the court correct?
First, was there such a vacancy? Suppose that John H. James, who was elected sheriff in November 1870, had duly qualified as such; that the county judge, in pursuance of the act of January 6, 1871, had required the sheriff Scott to execute a new bond; and upon the failure or neglect of Scott to execute such bond within thirty days from the passage of the hct, had required the county treasurer to execute a new bond, which the said treasurer also failed or neglected to execute, would not the office of the sheriff Scott, as collector, then have become vacant? The books of the commissioner of the revenue were not put into his hands until the 20th of December 1870, and it was impossible for him to have collected the revenue of that year, during the few remaining days of the year. He could not have collected, certain^he could not have distrained *for it, after the expiration of that year, for he would then have been no longer sheriff. The revenue in that case could have been collected, neither by the old sheriff nor the new sheriff, nor the county treasurer. Not by the first nor the last, because of their failure to give the new bond; nor by the second, because the law expressly denied to him the power to collect the state revenue or the county levy. There would then have *545 been an absolute necessity for the appointment of a collector. If the power to make such an appointment would not result from the necessity of the case, could it not be found in the provision of the Code of 1860, page 282, chapter 49, section 18, referred to in the opinion of the learned judge of the court below? That provision is in these words: “In any case of vacancy, in the office of sheriff or sergeant, by other causes than the death of such officer, the court of the county or corporation in which such vacancy shall exist, may appoint a collector of the taxes, levies, militia fines and officers’ fees, or any of them, in such county or corporation.” That xrrovision was not contained in the Code of 1849; but being found to be necessary, was embodied in an act passed March 29th, 1851, entitled “an act concerning commissioners of the revenue and for other purposes. ’ ’ Acts of A ssembly 1850-51, p. 7, chap. 6 — being the twentieth section of that act. It was afterwards embodied in the Code of 1860. It has not since been repealed, certainly not expressly; and we think, not by implication. Suppose the sheriff Scott had been required to give a new bond, and accordingly had given it, in pursuance of the act of January 6, 1871, would not the effect of the act, and the requisition and execution of the new bond, have been to have made him collector of taxes, levies, &c? The very object of that act was to make him such a collector; *and not to make him sheriff for any other purpose. Can it make any difference that he is not called “collector,” eo nomine, in the act, although he is described as such by unmistakable terms? Suppose that, notwithstanding the failure of Scott to give the bond required of him within thirty days from the passage of the act of January 6, 1871, he had, on the 13th of February 1871, just seven days after the lapse of the thirty days, given bond in strict and literal pursuance of the said act, would not such bond have been valid? According to the case of Monteith, sheriff & als. v. The Commonwealth, 15 Gratt. 172, it seems that it would.
But there was such a vacancy, at least so far as related to the collector of the taxes, levies, &c. ; notwithstanding John H. James ■did not qualify as sheriff under his election in November 1870. The act of July 11,1870, as we have seen, expressly declared “that the sheriff, after the year 1870, shall not collect the state revenue or the county levy. ’ ’ So that even if Scott continued to be sheriff for all other purposes, until his successor was elected and qualified, he certainly did not as to the collection of the state revenue, after the 31st of December 1870. So that the office of sheriff, as to that purpose, was, to all intents and purposes, vacant on the 13th of February 1871, when Scott was appointed collector and executed the bond in question.
But suppose we be wrong in all this. Did it not devolve on the court to determine whether there was or not a vacancy; and to fill it if there was? Was not this a matter within the jurisdiction of the court? and the court having exercised its jurisdiction, can its judgment be questioned in a collateral way? And, especially, we ask, can it be so questioned by Scott, who voluntarily accepted the appointment and executed *the bond; or by his sureties, who voluntarily assumed their liability as such? Are they not all estopped by their act and by the bond from now raising such a question?
We think that all these questions are already decided by decisions of this court, some or all of which were cited in the argument: Pratt v. Wright &c., 13 Gratt. 175; Monteith v. The Commonwealth, 15 Id. 172; Gibson v. Beckham &c., 16 Id. 321, especially the last two cases. In Monteith’s case, he was elected sheriff of Stafford in May 1854, and gave bond as such. In July 1856, he gave bond under the act of March 15th, 1856, extending the time for which sheriffs should hold office to January 1, 1857. In May 1856, he was re-elected sheriff for a regular term of two years, commencing the 1st of January 1857; but he did not give his official bond under that election within sixty days from his election, nor until the 12th of Januarj'1857, when it was executed by himself and his sureties. This bond recited his election for two years from the 1st of January 1857, was acknowledged in open court and ordered to be recorded; and Mon-teith was permitted by the court to qualify as sheriff and act as such. It was held, first, that if Monteith was not sheriff de jure he was sheriff de facto, and as such was bound for his acts; secondly, that the sureties of Monteith on his last bond were estopped "by the recitals thereof from saying Monteith was not sheriff, and the bond was binding upon them; and thirdly, that Monteith having professed to enter upon his office and act under his last election, it could not be held that he continued to hold over and act under his first election on the ground that his successor had not qualified, so as to subject his sureties in the previous bonds. Allen, P., delivered an opinion in the case *which was concurred in by all the other judges. He reviewed the authorities and came to conclusions which are strikingly appropriate to this case; but we will not repeat them.
Gibson v. Beckham &c., is a strong authority to show the conclusive effect of a judgment of a court of competent jurisdiction in the case until it is reversed. There the court, by an erroneous judgment, appointed an administrator, c. t. a., who executed his official bond with sureties in the proper form. It was held, first, that the bond was valid, and bound the administrator and his sureties for his default ; secondly, that where a court has cognizance of the subject matter, its judgment, though it maj’ be erroneous, is not void; it is binding until it is set aside or reversed, and cannot be questioned incidentally; acts done and bonds taken under it bind the obligors. Thirdly, that where a court or officer has authority or capacity to take a bond, and *546 makes a mistake by omitting- some condition prescribed, or'inserting a condition not authorized or illegal; unless the statute, by express words or necessary implication, makes i t wholly void, the bond is not void; the good will not be vitiated by the bad; and the bond may be sued on so far as the conditions are good, as a statutory bond; and fourthly, that when the court has cognizance of the subject matter, or capacity to take a bond, and takes a bond which ,on its face is valid, but contains a recital of facts necessary to its validity; as in the cases of the election and induction into office of a sheriff, the presence of the justices named as obligees and the like, the obligors shall be estopped from denying the truth of such recitals. Allen, P., also delivered an opinion in that case in which all the other judges concurred, and in which he reviewed the ^authorities. His views there, too, are strikingly appropriate to this case, but need not be here repeated.
In the case under consideration, the bond recites that “by reason of a vacancy in the office of sheriff of the county as .collector of taxes, in pursuance of the act of the general assembly passed February (January) 6, last, the court appointed the said Alexander Scott to be collector of the taxes, levies and officers’ fees for the present year in this county;” and the order of court made at the same time contains the same recital in effect. We must presume, therefore, that everything was done which was necessary to be,done under the act of January 6, 1871, to create such a vacancy, and therefore that both the sheriff Scott, and the treasurer of the county, failed to execute a new bond, upon being required to do so by the county judge in pursuance of that act. And the court having thereupon adjudged that a vacancy existed, and having filled it by the appointment of Scott, and Scott having accepted the appointment, and entered into bond with sureties, the bond is therefore valid, and Scott and his sureties are estopped from denying the truth of the recitals therein contained.
We are therefore of opinion that the first assignment of error is not well founded, and will now proceed to consider the other, which is,
Secondly, that if the bond is valid the condition of it was fully performed.
Whether the condition was fully performed or-not depends upon the right of the plaintiffs in error to two additional credits claimed by them, one for $2,915, and the other for $380. If they be proper credits, then the whole amount of taxes with which the sureties were chargeable under the said bond has been fully paid. The plaintiffs in error, in their petition for a *writ of error, say the ‘ ‘defalcation for which this judgment was entered was produced by the misapplication of the sum of $2,915, collected by Scott of the revenue of 1870, prior to the 13th day of February 1871, and applied by him to the payment of the taxes of 1869, for which he was then in arrear.” “This sum thus collected was paid by Scott to the auditor in January 1871, and as it was collected and paid to the auditor by Scott prior to the execution of the collector’s bond, your petitioners, who are the sureties in said bond, are in no manner liable for it.” “The defalcation was further increased by the sum of $380, ’ ’ which they say was also derived from the collection of the revenue under the said bond, but was improperly applied to the payment of the license taxes of 1870, in respect to which said Scott was in arrear, but which was not covered by the condition of the bond. The facts on which this claim to these two additional credits is founded seem to be fully sustained by the evidence certified in the record; and the question is, are the plaintiffs in error entitled to these credits?
Scott was charged by the auditor with the whole- amount of the taxes of Caroline count3’- for the year 1870, and he was credited with such payments as were made on that account, for which as made receipts were given from time to time, specifying on what account the payments were made. He was also credited with the amount of his commissions and his delinquent list, leaving a balance of $3,318.31, claimed bj^ the auditor to be due on account of the revenue of 1870, for which, besides interest, damages and costs, he claimed and obtained judgment in behalf of the state against the collector and his securities. Did he do wrong in applying the two payments of $2,915 and *$380 to prior debts due by Scott as aforesaid, for which the said securities were not liable?
Scott owed two debts to the commonwealth, for which different sets of sureties were liable. He made payments to the auditor on account of these different debts at different times, which payments were applied by the auditor according to the direction of the debtor. This was perfectly proper, if the auditor acted fairly. And it is not pretended that he did not. Certainly there is no evidence in the record tending to prove that he did not. If he had known that money applied by Scott to the payment of a debt for which his sureties as collector were not liable, was derived from the collection of revenue collected by him under the bond in which they were sureties, they might have had just ground of complaint. But he had no such knowledge, and the money had no ear mark. The law is well settled, that a man owing two debts to the same creditor, and making a payment to the creditor, may apply it to either of the debts, as he pleases. If the debtor fail to make the application, the creditor can make it, as he pleases; and if both fail to make it, the law will make it, according to the circumstances of the case. And in the absence of any other controlling circumstances, the payment will be applied first to the older debt. In this case the application was made by the concurrent act both of the principal debtor, who made the payment, and of the creditor. The balance remaining, after applying the credits which were properly applicable to *547 the discharge of the revenue of 1870, was a debt for which the sureties of the collector were chargeable, although a portion of the revenue of 1870 was collected prior to the execution of the collector’s bond. The payments made by Scott on account of the revenue *of 1870, were, at least without any direction of Scott to the contrary (and there was none), properly applicable to the payment of what he had collected, in the order in which it was collected, on the principle before stated. Thus leaving due that portion of the revenue for which the sureties of the collector were clearly liable. Therefore the case of Farrar & Brown v. The United States, 5 Peters. R. 388, relied on by the learned counsel of the plaintiffs in error, does not apply to the case. It might have applied if no payment had been made by Scott on account of the revenue of 1870, or not enough to discharge the amount which had been collected prior to the execution of the collector’s bond. In this case the sureties might well have said, according to the case in 5 Peters, that they were not bound for money collected bjr their principal before they became liable as sureties. But here that portion of the revenue has been long since paid by Scott, and is not now sought to be enforced against his sureties.
We are therefore of opinion that there is no error in the judgment, and that it ought to be affirmed.
BOUIvDTN, J., concurred entirely in the last proposition discussed by Moncure, P., but he had great doubt on the first “point. He was, however, disposed to yield to the united opinion of the judges; but on another ground; on the principle on which Corprew v. Boyle was decided.
Judgment affirmed.
After the judgment of this court had been rendered the appellees presented a petition for a rehearing of the case upon the last point discussed by the judge, on the ground that the principle as to the application *of payments between individual creditors and debtors does not apply as between the state and her debtors.
MONCURIO, P.
After the opinion was delivered, and judgment entered by this court in this case, the learned counsel of the plaintiffs in error jrresented a petition for a rehearing of one of the points decided in the case, to wit: that the said plaintiffs are not entitled to the two additional credits claimed by them, one for $2,915, and the other for $380. We have carefully considered the grounds relied on in the petition, and the cases referred to therein, and come to the following conclusions concerning the same.
The petitioners contend “that the principle on which the court placed the decision of this point does not apply to the case of a receiver of public moneys, who has given a bond with security to a ccount for it; that the officer and state do not stand in the relation of debtor and creditor, and that the sureties in the bond have a direct interest in the money, and that there can be no other application of the money than in accordance with the condition of the bond. ’ ’ The principle here referred to, as the one on which the court placed the decision of the point in question, is in relation to the application of payments, and is thus stated in the opinion of the court: “The law is well settled, that a man owing two debts to the same creditor, and making a payment to the creditor, may apply it to either of the debts, as he pleases. If the debtor fail to make the application, the creditor can make it as he pleases. And if both fail to make it, the law will make it, according to the circumstances of the case; and, in the absence of any other controlling circumstances, the payment will be applied first to the older debt.”
*The petitioners seem to suppose that where a receiver of public money, appointed for successive periods, gives bonds with different sets of sureties, to account for his collections during those periods respectively, all his payments on account of such monejr are presumed, in the absence of evidence to the contrary, to have been made with money collected on account of the bond in operation at the time of such payments respectively, and must accordingly be applied to the credit of such bond until it is discharged, before they are applied to the credit of any of the other bonds. And some of the cases to which they refer seem to tend to sustain that view. But we think it will be found, on a critical examination of those cases, that the points really decided in them do not in fact sustain that view. And, if they do, we are of opinion that they are in conflict with a well settled principle, and are founded on a misapprehension of that principle.
The cases referred to, which seem to tend to sustain that view are, United States v. January & Patterson, 7 Cranch 572, decided in 1813; Postmaster General v. Norvell, Gilpin 106, decided in 1829; and Myers v. The United States, 1 McBean 495, decided in 1839. The first was a decision of the Supreme court of the United States. The latter two were decisions, one of a circuit and the other of a district court of the United States. The latter two were expressly founded on the first named case, as no doubt are all the opinions since expressed by courts or judges to the same effect. If the foundation falls, the superstructure, ramified as it may be, must also fall with it.
Fortunately, it does not remain for us to show what was really decided by the case in 7 Cranch 572; and that it certainly does not go to the extent which is claimed for it by the petitioners. That work has ^already been done by a master workman, no other than Mr. Justice Story, in two cases decided by him: Postmaster General v. Furber &c., 4 Mason’s R. 333, decided in 1827; and United States v. Wardwell &c., 5 Id. 82, decided in 1828. In the former it was held, according to the re *548 ■porter’s marginal abstract of the case, that < ‘where there are items of debt and credit in a running account, between the postmaster general and the deputy postmasters, in the absence of any specific appropriation ¡by either party, the credits are to be applied to the discharge of the debts antecedently due, in the order of the account.” Two bonds had been successively given by the same postmaster with different sets of sureties, and actions of debt were brought upon them. Sundry payments had been made to the general postoffice on account, which, if applied to the purpose would extinguish the balance due at the time of giving the second bond. The real contest therefore was between the sureties to the first and second bond; and the only question made by them and presented for the consideration of the court was, whether the payments so made generally on account, after the giving of the second bond, should be applied to extinguish the prior balance, or were to be applied indischarge of the balance of postages received since the second bond was given.t Story, J., said: 1 ‘The sums paid by the principal since the second bond was given, having been paid upon account generally, are to be applied to extinguish the balance an-tecedently due. Such, I understand, to be the general rule where there is a running account composed of successive items of debit and credit on each side. In such cases the payments are to be applied to extinguish antecedent debts on the debit side, there being no specific appropriation by either party. *It is the first item on the debit side of the account that is discharged or reduced by the first item on the credit side. This doctrine was very deliberately settled by the master of the rolls in Clayton’s case, 1 Mer. R. 604; and it appears to me entirely consonant to equity and good sense, and the fair presumptions of intention as to appropriation, deducible from the nature of such transactions. The case of the United States v. January & Patterson, 7 Crunch 572, does not, according to my apprehension of it, inculcate a different doctrine. It-is, indeed, somewhat difficult, from the facts of the case as reported, to give a very definite interpretation of the opinion of the court. I confess myself never to have supposed that it meant to go further than to reverse the erroneous opinions of the court below upon the points ruled by it.” “It appears to me that if, in the absence of any other distinct appropriation, the rule be, as I suppose it to be, there can be no difference whether the case respects a principal or a surety. The rule • supposes that payments generally made are to be applied to extinguish or reduce . antecedent debits, according to the order of time, and when extinguished or reduced as to the principal they are necessarily so as to all other persons. ’ ’
Now if Judge Story, in that case, correctly expounded the law, there can be no doubt about the correctness of our decision in this case.
In the other case decided by him and cited | supra, the same principle, in its application to a. similar case, was reaffirmed. There the contest was between different and successive sets’ of sureties of the same receiver of public money, in regard to the proper application of payments made by the receiver on general account. “It is,” said Judge Story, “the common case of a *running account, where there are various debits and credits on each side, and the question is, in such a posture of things, where there has been no specific application made of any payments by either party to any specific items, how the payments thus passed into general account are to be deemed, in point of law, to have been applied. My opinion is, that they are to be considered as applied in discharge of the items antecedently due, in the order of time in which they stand in the account. ’ ’ 1 ‘The case of U. S. v. January & Patterson, 7 Crunch 572, has been supposed to justify a different doctrine. It appears to me that such is not the true explanation of the case.
It turned wholly upon its own particular circumstances, and the charge of the Circuit court, which, with reference to the facts, the Supreme court thought erroneous. The questions then were (1), whether the supervisor had any right to make a special application of any prior payments, made on general account; and if he had, then (2), whether the promise of the supervisor to make a particular application of the payments, after they had been passed into general account, was, per se, an application of such payments, unless followed by some positive act of appropriation. The Supreme court decided bpth points against the defendant, and overruled the contrary decision of the Circuit court. The case of the United States v. Nicholl, 12 Wheat. R. 505, in which the United States v. January & Patterson, is recognized, turned upon entirely distinct considerations. There the United States were supposed to have a right, like any other creditor, to apply payments made by the debtor to any account, where the debtor himself had made no application. I have had occasion to consider this point in the case of the Postmaster General v. Furber, and to the opinion there given I ^deliberately adhere. ’ ’ To the opinion of the court in the case reported in 5 Mason 82, pp. 87-94, Judge Story has appended a long note fully explaining the case reported in 7 Cranch 572, the statement of which, as to the facts apparent on the record, is, he says, inaccurately given in that report.
In the case of Boody &c. v. The United States, 1 Woodbury & Minot’s R. 150, decided in 1846, which was the case of a postmaster who had given three successive bonds with the same sureties, on which bonds an action of debt was brought, and the question was, in regard to the proper application of payments made by him on general account; the materiality of the question arising from the fact that the act of limitation would bar any claim under the first bond; it was held that payment is to be applied to the oldest *549 debt, if the debtor give no directions; and it must be proved that the payment came from receipts accruing under a second bond, if that is relied on against the propriety of applying it to any balance still due under a prior bond. In that case, as in the cases decided by Judge Story, cited supra, the United States were held to be a creditor in srich case within the meaning of the general principle in regard to the application of payments.
It may be proper here to refer to 1 American Leading Cases, marg. 268-295; reporting, The Mayor &c. of Alexandria v. Patten &c., 4 Cranch 317; Field &c. v. Holland &c., 6 Id. 8, with the notes of Hare & Wallace thereto appended, as containing a reference to most of the cases on the subject of the application of payments. Those learned annotators, on p. 292, note 4, refer to the case of U. S. v. January & Patterson, 7 Cranch 572, and other cases, and seem to think that they establish or recognize an exception to the general *rule; and perhaps to the extent contended for by the learned counsel of the petitioners.
Upon the whole, however, we are decidedly of opinion that the rule is correctly laid down by Mr. Justice Story in the cases decided by him and before referred to, and that it applies as well to the government as any other creditor. It is very important to the interest of the government that the fact should be so, and it is just we think to public officers and their sureties. We think that the uniform practice in this state has conformed to that construction of the law. It has been very common for the same person charged with the duty of collecting taxes and other money to be reappointed to office, and to give new bonds with different sets of sureties. In such cases, we believe the auditor of public accounts has been always in the habit of applying any money paid him on the public account according to the direction of the person paying it, and in the absence of any such direction, and of any information as to the propriety of a different application, we believe that official has been always in the habit of applying a general payment on account, first to the discharge of the older portion of the account standing on his books against the person making the payment. It would certainly be productive of very great inconvenience, if not loss, to the public, or at least to the auditor, if it were necessary for him to ascertain at his peril, or at the peril of the public, that every application made by him, of every payment made to him on the public account, was such an application of such a payment as was proper to be made, in view of the source from which the money was derived, and in view of the conflicting interests of sureties. The auditor must, of course, act in good faith. He cannot legally apply to the benefit of A money *which he knows ought to be applied to the benefit of B. If a sheriff receive money for which his surety B is liable, he ought to apply it to the discharge of such liability, and not to the discharge of a liability of A on his account. Such a misapplication would be a fraud on the rights of B; and if the auditor received the money, with knowledge of the fraud, he would be a particeps criminis. But if the auditor have no such knowledge he can incur no such liability, and the application of the payment thus made by him in good faith is legal and valid, even though the money so paid ought to have been differently applied by the sheriff. It is the duty of the auditor to collect every debt due to the public by the sheriff. If the latter offer to pay such a debt to the former, and the former does not know, and has no reason to believe that the money with which such payment is offered to be made is money which the sheriff has no right so to apply, it is the duty of the auditor to receive the money. It does not follow that the sheriff who is indebted to the commonwealth, on account of two successive bonds, can legally be in possession of and entitled to no money, which he did not receive under his last bond. He may have ample private resources. There may be money due to him under his old bond, on account of which he may have made collections after giving the new bond, as, indeed, is very often the case. Suppose, a private creditor of a sheriff bona fide receive of the latter in payment of the debt money derived by the latter from the collection of taxes, not knowing that the money was so derived, would not the act be legal and valid on the part of the creditor? Why is not the effect the same when the creditor is the commonwealth? Is there any reason applying to the former which does not apply to the latter case? Is there not *a special reason why the commonwealth and her auditor of public accounts should not be embarrassed with perplexing enquiries in regard to relative and conflicting rights of different sets of sureties of the same public debtor who may offer to make a payment on account of the debt? Does justice to the sureties require that they should be thus taken care of at the expense of so much public inconvenience? They voluntarily became sureties, knowing the nature of their undertaking. They trusted their principal, and enabled him to get the public money in his hands. Why cannot they watch over him, and take care that he applies it properly? Certainly their principal, in whom they .trusted, and whom they accredited, has it in his power to protect them at least against a misapplication of any payment he may make of money collected by him, for he may direct and control the application at the time of the payment.
We think the following may be laid down as general rules of law, deducible from all the cases on this subject, viz: A payment by a debtor who owes several debts to a creditor, is to be applied to one or the other of the debts; first, as the debtor may direct at or before the time of making such payment; and such direction may be given expressly or by implication. Secondly, if the debtor give no such direction then the creditor may make the application, according to his *550 pleasure; and he may make it, either at the time of such payment, or afterwards, before the commencement of any controversy on the subject; though after he has once made the application, he cannot change it to another without the consent of all other persons concerned. Such application by a creditor may also be made either expressly or by implication. If he enter the debits and credits in a general account, as they *occur, this will be considered, in the absence of any evidence to the contrary, as a general application of the credits to the debits in the order of time in which the latter occur; thus paying first the antecedent debts. Thirdly, if neither the debtor nor the creditor make the application, then the law will make it, according to the circumstances of each particular case; and if there be no other controlling circumstance, the application will be made according to the order of time, paying first the oldest debt. But if the debts be due by a collector or other receiver of money under bonds with different sets of sureties, then the law will so apply the payments, if possible, as that the money collected under one bond shall be applied to the relief of the sureties in that bond respectively. And the creditor in such a case, if he be informed as to the source from which the money with which a payment may have been made was derived, cannot apply it otherwise, even with the consent or by the direction of the principal debtor. Most of these rules were laid down to the same effect by Judge Christian, in delivering the opinion of the court in Howard &c. v. McCall &c., 21 Gratt. 205, 209.
Such being, in our view, the principles of law in regard to the application of payments, we think it is easy to apply them to this case. In regard to the sum of $2,915, paid and applied by Scott’s directions upon his indebtedness for the taxes' of 1869, it is certified in the record that the money with which this payment was made, was derived by Scott from collections made by him in January 1871, on account of the revenue of 1870, before he had given the bond of the 13th of February 1871; and we must therefore take the fact to be so. But it is not certified in the record, and does not appear, that the auditor knew that the money *so paid to him was so derived; and we must therefore take the fact to be that he had no such knowledge or information. What, then, was he t'o do when this money was tendered to him in payment of this debt to the commonwealth? Plainly it was his duty to receive and apply it accordingly. But, according to the argument of the learned counsel, the sureties in the bond of the 13th of February 1871 were not liable for money collected in the preceding January, at least if it did not remain in the hands of the collector when the bond was executed; and therefore they could not have been injured by a previous misapplication of that money. In no view, therefore, was any injury done to them by the auditor in receiving and applying that money as he did. The same principle applies to the $380 charged to have been “illegally applied by the auditor to cover the arrearages of Scott on a prior account.” He was wholly uninformed of the source from which that money was derived, whatever the source may have been. Thus far, certainljr, nothing was done by the auditor of which the petitioners can rightfully complain.
But it is contended that all the payments made by Scott on account of the revenue of 1870, after the execution of the bond of the 13th of February 1871, ought to have been applied, first to the payment of that part of the revenue of 1870 which was collected after that day, and not to that part which was collected before that day; and that if such application had been accordingly made, nothing would be due upon the said bond. Now let us see how that matter is.
When Scott made the payment of his prior arrearages as aforesaid, he did not have himself charged on the books of the auditor with the same or any amount on account of collections of the revenue of 1870, or *make any report, or give any information, to the auditor, of any such collections. The only charge against him on the said books, on account of the said revenue, was of the whole amount which was made on receiving the books of the commissioner of the county. And against that charge he was credited by the payments afterwards made by Scott on that account, in the order in which they were made. For these payments, as they were made, receipts were given by the auditor, on account of the taxes of 1870, without saying when they were collected. The first of these receipts bears date on the 14th of April 1870, two months after the date of the collector’s bond, and is for $2,500. The other receipts bear different dates thereafter, running through the year 1871 into the year 1872, and’' one of them into the year 1873. All of them together amounted to nearly $16,000; and with the delinquent list and commission, would have been sufficient to cover the amount of the taxes for 1870, after deducting the amount which had been collected in January 1871, before the execution of the bond. The petitioners contend that these payments ought to have been applied, and must be considered as having been applied to the payment of that part of the taxes for which they were liable, to wit: the part collected after the execution of the bond. Whereas the commonwealth contends, that being general payments on account of the taxes of 1870, they should be first applied to the payment of that part which was first collected, to wit: the part collected in January 1871, that being the older debt. We think the commonwealth is right, according to the well settled principle of law before stated. Scott might have directed the application according to his pleasure. But he gave no direction on the subject. The right then to make the ^application devolved on the auditor, provided that he made it to some part of the taxes of 1870, to which the payments *551 ■were limited according' to the terms of the receipts. He made it first to the older debt, according to the uniform usage of the office; and if he did not, the law, as we have seen, made that application. The bond of Scott as collector was not sent to the auditor until some time after the 3d of March 1873.
But there is not a particle of evidence in the record tending to show from what source Scott derived the money from which any of these payments were made. There is no presumption of law or fact that it was derived from the collection of taxes. It was not ear-marked. It was unmarked money which he paid to the auditor on account of the taxes of 1870, all of which he owed. We are not aware that according to any case which has been decided would these payments be applicable, first to the payment of the taxes collected after the execution of the bond, unless they were made with money actually derived from such taxes; and we have seen there is not a particle of evidence in the record tending to prove that fact.
In every view of the case, therefore, we are of opinion that there is no error in the judgment, and that the petition ought to be refused.
CHRISTIAN, STAPLES and BOULDIN, Js., concurred in opinion of Moncure, P.
ANDERSON, J., concurred in the result.
Rehearing refused.