[No. 13194. *En Banc.* July 7, 1916.]

STURTEVANT COMPANY, *Respondent*, v. FIDELITY & DEPOSIT
COMPANY OF MARYLAND, *Appellant*.[1]

APPEAL—REVIEW—NEW TRIAL—DISCRETION. The granting of a
new trial for insufficiency of the evidence will not be disturbed ex-
cept for clear abuse of discretion, and none appears where the evi-
dence is in substantial conflict upon a controlling issue.

PRINCIPAL AND SURETY—CONTRACTOR'S BOND—RIGHTS OF SURETY—
APPLICATION OF PAYMENTS. The surety upon a contractor's bond to
secure laborers and materialmen is not discharged by the fact that
a payment by the contractor to a materialman without instructions
as to its application, derived from the contract, was applied by the
materialman to an older debt not secured by the bond, where the
materialman had no knowledge as to the source of the money at the
time of making the application; since want of knowledge by the
creditor is controlling of his right to make the application.

Appeal from an order of the superior court for King
county, Dykeman, J., entered June 30, 1915, granting a
new trial, after a verdict rendered in favor of the defendant,
in an action on contract. Affirmed.

*Trefethen, Grinstead & Laube*, for appellant.

*Aust & Terhune*, for respondent.

PARKER, J.—The plaintiff, The B. F. Sturtevant Com-
pany, seeks recovery upon a bond executed by the defend-
ant, Fidelity & Deposit Company of Maryland, as surety,
to secure payment of claims of materialmen furnishing ma-
terial for the construction of the heating plant for a school
building belonging to consolidated school district No. 305,
of Snohomish county. Trial was had in the superior court
sitting with a jury, and resulted in a verdict in favor of
the defendant. A motion for new trial was made by counsel
for the plaintiff upon the grounds, among others:

"First, Insufficiency of the evidence to justify the ver-
dict. Second, That said verdict is against the weight of
the evidence."

[1]Reported in 158 Pac. 740.

The motion was granted by the court upon these grounds. The order entered by the court expressly so stated. From the order granting the motion for a new trial, the defendant has appealed.

The granting of a motion for new trial upon the ground that the evidence is insufficient to support the verdict or upon the ground that the verdict is against the weight of the evidence is a matter within the discretion of the trial court, which will be reversed upon appeal only for the plainest abuse of such discretion; and when the evidence is in substantial conflict upon a controlling issue in the case, it cannot be said that there is any abuse of discretion by the trial court in granting a new trial upon either of these grounds. See *Independent Brewing Co. v. McCrimmon,* 85 Wash. 610, 148 Pac. 787, and our decisions there cited. Counsel for appellant, as we understand them, concede this to be the law, but contend that there is no conflict in the evidence touching any controlling issue in this case such as would warrant the jury finding other than for appellant, as it did find by its verdict. In other words, it is insisted that appellant is entitled to verdict and judgment in its favor as a matter of law, leaving no room for the exercise of discretion by the trial court upon the question of new trial. Our inquiry then is, is the evidence introduced in this case in substantial conflict upon any controlling issue in the case?

In May, 1914, Adams Moffat Heating Company entered into a contract with consolidated school district No. 305, of Snohomish county, agreeing to furnish the material for, and construct the heating plant for, a school building belonging to the district. Thereupon the heating company executed a bond with appellant Fidelity & Deposit Company of Maryland as surety thereon in pursuance of the provisions of Rem. & Bal. Code, § 1159, relating to security for materialmen and others on public works. This bond is conditioned that the heating company "shall pay all laborers,

mechanics, subcontractors and material men, and all persons furnishing provisions or supplies for the carrying on of said work, and all just debts, dues and demands incurred in the performance of said work." This is in substance the condition of such bonds required by Rem. & Bal. Code, § 1159. Respondent furnished to the heating company material to be used and which was used in the construction of the heating plant, and claims a balance due thereon of $948, for the recovery of which it commenced this action against appellant as surety upon the bond. Appellant admits that there is a balance due to respondent for material so furnished of $248, which sum appellant tendered and deposited in court for the benefit of respondent. Appellant denies that any greater sum is due to respondent in so far as its liability upon the bond is concerned.

The real controversy is over the proper application of a payment of $700 made by the heating company to respondent. When this payment was made, the heating company was indebted to respondent upon another and older account not secured by this bond. This payment was made by the heating company's sending its check to respondent, evidently through the mail. According to the testimony introduced in respondent's behalf, the heating company gave no direction whatever relative to the application of the $700 so paid by it to respondent. According to the testimony introduced in respondent's behalf, it also appears that the source from which the heating company acquired the $700 was unknown to respondent, its officers and agents. We do not say that the evidence was conclusive in respondent's favor upon the questions of the heating company's failing to direct application of the $700 payment and respondent's knowledge of the source from which the heating company acquired the $700. For present purposes, it is sufficient for us to state that there is testimony strongly tending to show these facts, and which was ample to support findings to that effect. In other words, viewing the evidence most

favorably to appellant's contentions, it is at least conflicting upon these questions. It is not pretended that appellant, at the time of the payment, made any claim of its right as surety to have the $700 applied upon the debt due respondent which was secured by the bond.

Upon receipt of the $700, respondent immediately applied the same upon the older debt owing to it by the heating company and immediately so notified that company by letter. The evidence introduced in appellant's behalf shows that this $700 was acquired by the heating company from the school district in part payment for the construction of the heating plant; so that, as insisted by counsel for appellant, respondent was receiving money which appellant was entitled to have applied in payment of debts secured by the bond, respondent's claim for material furnished to the heating company being one of such debts. We may concede, for present purposes, that the evidence conclusively shows that the $700 paid by the heating company to respondent was acquired by the heating company from the school district as a payment upon the construction of the heating plant.

Counsel for appellant proceed upon the theory that its equity in the funds payable from the school district to the heating company upon its contract is such as to entitle appellant, as surety upon the bond, to have all such funds as can be traced into the hands of respondent as payments to it by the heating company applied upon debts due from the heating company to respondent for the furnishing of material for the construction of the heating plant, regardless of the application of such payments by the heating company or respondent as between themselves, and regardless of want of knowledge on the part of respondent as to the source from which the heating company acquired the money which it paid to respondent. As we proceed, we shall regard our problem as being reduced to this: Assuming that the $700 was paid by the heating company to respondent without any direction as to its application, and that it was

thereupon applied in good faith by respondent upon an older unsecured debt due to it from the heating company, and that respondent had then no knowledge as to the source from which the heating company acquired the $700, is the equity of appellant as surety upon the bond such as to entitle it to thereafter have the payment applied upon the debt due from the heating company to respondent which the bond was given to secure, and which is here sued upon? The evidence being sufficient to support these assumptions of fact, the trial court did not abuse its discretion in granting a new trial, if they, as a matter of law, entitle respondent to have its application of the payment of the $700 remain undisturbed.

It is elementary law that a "creditor may apply a payment, voluntarily made by a debtor without any specific appropriation where there are two or more debts, to whichever debt he pleases." 30 Cyc. 1233. *Frazer v. Miller,* 7 Wash. 521, 35 Pac. 427; *Post-Intelligencer Pub. Co. v. Harris,* 11 Wash. 500, 39 Pac. 965; *Crane Co. v. United States Fidelity & Guaranty Co.,* 74 Wash. 91, 132 Pac. 872. The rule is not without its exceptions; one of which is stated in the text of 30 Cyc. 1237 as follows:

"Another exception to the rule that the creditor has the right to apply the payment obtains when the money with which the payment is made is known to the creditor to have been derived from a particular source or fund, in which case he cannot, without the consent of the debtor, apply it otherwise than to the exoneration of the source or fund from which it was derived."

This, however, seems to recognize that want of knowledge of the source of the money on the part of the creditor receiving it renders this exception as not restricting the right of such creditor to make his election as to the debt upon which he will apply the payment. We think as we proceed it will be found that the weight of authority supports the view that such want of knowledge also secures to

the creditor, even as against the claims of sureties, the right
to have his application of the payment, which he has made
in the absence of such knowledge and in good faith, remain
undisturbed.   But .before noticing the authorities holding
to this view, let us review our own decisions touching the
question of the right of a surety to invoke its equity in a
given fund after the application of a payment made there-
from as between the original debtor and creditor, having
in view respondent's want of knowledge of the source of this
money and its application in good faith to the older unse-
cured debt.

In *Crane Co. v. Pacific Heat & Power Co.*, 36 Wash. 95,
78 Pac. 460, recovery was sought against the surety upon
a bond like that here involved.   The surety pleaded as an
affirmative defense against the claim of the plaintiff, a ma-
terialman, that payments were made to the plaintiff by the
contractor with money received in part payment upon the
contract, of which fact the plaintiff had knowledge, and
that it was so received and applied with intent on the part
of the plaintiff to defraud the surety.   These facts were
held to state a good defense and demurrer thereto was over-
ruled.   The court held, in substance, that under such cir-
cumstances the surety was entitled to have the payment ap-
plied upon the debt secured by the bond upon which it was
surety, though the surety did not claim its right to have
application of payment so made until after the plaintiff
had actually made the application to another debt.   The
court discussed the equities of sureties touching their right
to application of payments made by their principals from
funds in which they have equities.   It seems that the right of
the surety in so far as it might be affected by want of
knowledge of the plaintiff as to the source from which the
money was derived was not specifically noticed.   We think,
however, that decision is not opposed to the view that such
want of knowledge is of controlling force in support of the
right of the creditor to have the application, so lawfully

made by him, remain undisturbed.   The discussion in that
decision seems to have reference only to the abstract prop-
osition of the surety's right to have the application of the
payment made in its interest.   The court seems to have
given no thought to the manner or time of the exercise or
claim of that right by the surety.   The question here is not
what appellant's rights as surety were at the time of the pay-
ment from the heating company to respondent, but whether
its rights as then existing were lost or waived by its and its
principal's failure to at that time direct application of the
$700, in view of respondent's want of knowledge of its
source.

In *Bowles Co. v. Clark*, 59 Wash. 336, 109 Pac. 812, 31
L. R. A. (N. S.) 613, it was held that the receiver of the
money was bound to apply it in the interest of a third
party from whom it was acquired by the one paying it.
This holding was manifestly rested upon the fact that the
circumstances were such as to require the creditor to take
notice of the source of the money.

In *Hughes & Co. v. Flint*, 61 Wash. 460, 112 Pac. 633,
we have a situation where the circumstances were held to
be such as to show that the creditor had notice of the source
of the money with which his debtor was paying him.   It
was held, manifestly because of that fact, that the creditor
must apply the money on the debt which the one furnishing
the money to the debtor had an equitable right to have dis-
charged with the money.   These *Bowles* and *Hughes* deci-
sions mean simply that the one furnishing the money or
having an equity therein is entitled to have the money ap-
plied upon the debt he is liable for.   As to him, there is
only one debt, so there is no necessity of his directing ap-
plication of the payment when the creditor knows that he
has furnished the money or has an equity therein.

In *Crane Co. v. United States Fidelity & Guaranty Co.*,
*supra*, the question of the creditor's knowledge of the source
of the money which he applied upon an unsecured debt was

apparently not involved.  Neither does it appear from the
opinion as to what equity, if any, the defendants had in
the particular funds with which the payment was made.

After payment has been lawfully applied upon a debt,
either in pursuance of direction by the debtor, or applied
by the creditor at his own election in the absence of such
direction by the debtor, such application of payment can-
not be changed to another debt without the mutual consent
of the creditor and debtor.  30 Cyc. 1239.  The law re-
gards the rights of the parties as becoming fixed at the
time the application is so lawfully made in so far as the
original debtor and creditor alone are concerned.  So, if
we were not confronted with the claims of appellant as
surety in this case, it is plain that, according to the evi-
dence introduced in respondent's behalf, it cannot be re-
quired to yield its rights acquired by the application of the
$700 to the older unsecured debt owing to it by the heating
company.  While the decisions recognize the right of a
surety to have a payment made from funds in which it has
an equity applied to the debt for which it is surety, we be-
lieve the great weight of authority qualifies the surety's
rights in this regard to the extent of confining the exer-
cise or claim of such right to the time of the making of the
payment, as the right of the original debtor is so confined,
where the creditor receives the payment from his debtor
without knowledge of the source of the money or of the
surety's equity therein, and in good faith exercises his right
of applying the payment to any one of the debts owing to
him by the one making the payment.

In *Inhabitants of Colerain v. Bell*, 9 Metc. (Mass.) 499,
there was involved the claims of sureties upon a tax col-
lector's bond.  It appears that the collector was in ar-
rears and owed the town money collected by him for the
year previous to that during which the sureties became
liable as such upon his bond.  The collector applied, in
part liquidation of his arrears for the previous year, moneys

collected by him during the year covered by the bond in question. Neither the town nor its officers, other than the collector, had knowledge of the source of the money so applied. Disposing of the contention of the sureties that they were entitled to have the money so applied credited upon the indebtedness of the collector covered by their bond, Justice Dewey, speaking for the court, said:

"The only remaining question is as to the deduction claimed on account of certain sums received by the collector on the taxes for the year 1841, and applied by him in payment of arrearages due from him on the tax bill of the previous year. It is to be remarked that the case stated is not one of a fraudulent appropriation by the payee, in derogation of the rights of sureties. The case discloses no knowledge, on the part of the town, of the source whence the money was derived, which was applied in part payment of the taxes of 1840. Neither is it a case of misapplication of any specific funds which the collector was bound to pay to the treasurer of the town. The specific money received by a collector, in the collection of taxes, is his money, and not that of the town. Such being the case, and the payment thereof being received by the town on account of arrearages of taxes of 1840, it cannot be said to be such a misapplication of payment that it should be withdrawn from its original application and applied to the taxes of 1841."

In that case, it seems that the collector directed application of the payment in satisfaction of his arrears of the previous year. That, however, did not any more effectually make the application than did respondent's election in this case, if the evidence introduced in its behalf be true. It is also of interest to note that that decision was rendered upon the theory that the money paid by the tax collector was his money notwithstanding it was money he had collected from the taxpayers. This was the theory as to the title to such money somewhat prevalent in earlier days, though it would not be considered the correct theory in this state at this time. The decision, therefore, is particularly in

point in view of the fact that it deals with the parties simply as debtor and creditor, with the sureties liable for one of the debts owing by the debtor to the creditor, and having an equity in the funds with which the payment was made entitling them to direct payment in their interest at the time of the making of the payment, but not thereafter, in view of the creditor's want of knowledge of the source of the funds.

In *Chapman v. Commonwealth*, 25 Gratt. (Va.) 721, there was involved the application of payments made by a sheriff to his county on account of public moneys collected by him, the county auditor making the application to arrears of the sheriff not covered by the bond in question, evidently because of the failure of the sheriff to direct the application. The sureties upon the sheriff's bond covering the year in which the sheriff collected the money so applied claimed that the application was wrongfully made in view of their equity in the money. The question was learnedly reviewed at great length in that case in the light of what seems to be about all of the authorities then existing. The court held that the sureties were liable, and not entitled to have their liability reduced by changing the application which had been made by the auditor upon the sheriff's arrears of previous years, in view of want of knowledge on the part of the county and its officers of the source of the funds with which the sheriff made the payment. Judge Moncure, speaking for the court commencing at page 748, observed:

"The auditor must, of course, act in good faith. He cannot legally apply to the benefit of A money which he knows ought to be applied to the benefit of B. If a sheriff receive money for which his surety B is liable, he ought to apply it to the discharge of such liability, and not to the discharge of a liability of A on his account. Such a misapplication would be a fraud on the rights of B; and if the auditor received the money with knowledge of the fraud, he would be a *particeps criminis*. But if the auditor have no such knowledge he can incur no such liability, and the applica-

tion of the payment thus made by him in good faith is legal and valid, even though the money so paid ought to have been differently applied by the sheriff. It is the duty of the auditor to collect every debt due to the public by the sheriff. If the latter offer to pay such a debt to the former, and the former does not know, and has no reason to believe that the money with which such payment is offered to be made is money which the sheriff has no right to so apply, it is the duty of the auditor to receive the money. It does not follow that the sheriff who is indebted to the commonwealth, on account of two successive bonds, can legally be in possession of and entitled to no money, which he did not receive under his last bond. He may have ample private resources. There may be money due to him under his old bond, on account of which he may have made collections after giving the new bond, as, indeed, is very often the case. Suppose a private creditor of a sheriff *bona fide* receive of the latter in payment of the debt money derived by the latter from the collection of taxes, not knowing that the money was so derived, would not the act be legal and valid on the part of the creditor? Why is not the effect the same when the creditor is the commonwealth? Is there any reason applying to the former which does not apply to the latter case? Is there not a special reason why the commonwealth and her auditor of public accounts should not be embarrassed with perplexing enquiries in regard to relative and conflicting rights of different sets of sureties of the same public debtor who may offer to make a payment on account of the debt? Does justice to the sureties require that they should thus be taken care of at the expense of so much public inconvenience? They voluntarily became sureties, knowing the nature of their undertaking. They trusted their principal, and enabled him to get the public money in his hands. Why cannot they watch over him, and take care that he applies it properly? Certainly their principal, in whom they trusted, and whom they accredited, has it in his power to protect them at least against a misapplication of any payment he may make of money collected by him, for he may direct and control the application at the time of the payment."

In *Grafton v. Reed*, 34 W. Va. 172, 12 S. E. 767, we have another case involving the rights of sureties upon a

tax collector's bond where moneys paid by him to the town of Grafton were received without knowledge of the town or its officers of the source of such moneys, and applied upon an obligation of the collector to the town to the detriment, as it was claimed, of his sureties. Judge English, speaking for the court, said:

"Neither defendant Reed nor either of the sureties appears to have given any direction for the application of said credit, and in the absence of such direction the plaintiff had the right to apply such credit to either of said debts according to its pleasure, unless it was cognizant of the fact that said credit was obtained with money collected by said Reed from taxes *etc.*, for the year 1879. See *Chapman v. Com.*, 25 Gratt. 721. In that case it is held *that* 'if the debts be due by a collector or receiver of public money under bonds with different sets of sureties, then the law will so apply the payments if possible as that the money collected under one bond shall be applied to the relief of the sureties in that bond; and the creditor in such case, if he be informed as to the source from which the money with which a payment may have been made was derived, cannot apply it otherwise, even with the consent or by the direction of the principal debtor.' The sureties of said Reed, however, in the bond executed by him on the 15th day of October, 1879, could not be heard to object to the application of said receipts and vouchers presented by said Reed to the extinguishment of said balance of one thousand and eighty-eight dollars and ninety cents due in the year 1877, unless they had satisfactorily shown that the money with which said receipts and vouchers were procured, was money collected on tax tickets, licenses *etc.*, which went into his hands for the year 1879, or that the plaintiff was informed as to the source from which the money was derived, with which said vouchers were obtained, and that it was obtained from taxes, licenses *etc.*, in his hands for collection for the year 1879; neither of which facts appears to have been proven by the defendants."

In *People, for Use of Hirth v. Powers*, 108 Mich. 339, 66 N. W. 215, there was involved the rights of sureties upon a bond in substance the same as that here involved. It was

held that the liability of the sureties was not affected by
the fact that the contractor paid to the materialmen, Hirth
& Son, money received upon the contract, which money was
in turn applied by the materialmen in payment of another
indebtedness due them from the contractor. Justice Hooker,
speaking for the court, made the following observations:

"This bond did not, in terms, provide that the contractor
should apply his earnings to pay the laborers or material
men, and the statute does not provide for such a bond. It
undertook that the contractor should perform his personal
obligations in his own way. It contemplated that he would
receive and disburse his money as should suit his conven-
ience. This contention depends upon an alleged equity that
the money earned shall be applied only upon the account
for materials furnished for the particular job. It is not
supported by the letter of the bond or statute, and we think
it is not supported by authority."

Our former decisions would hardly permit us to go to
the extent suggested by this language in order to uphold
the contentions of respondent; since it seems to give to the
creditor the right of election as to his application of the
payment regardless of his knowledge of the source of the
money. This Michigan decision, however, does support re-
spondent's contentions.

In *Thacker v. Bullock Lumber Co.*, 140 Ky. 463, 131 S.
W. 271, Judge Hobson, speaking for the court, said:

"In order to deprive the creditor of the right to apply a
payment where the debtor does not direct the application, it
must appear that the money of the innocent third party can
be traced through the debtor to the creditor, and the cred-
itor must know that he is receiving the third person's money,
or there must be facts sufficient to put him on notice. The
equity of a third person can not affect the creditor when it is
unknown to him and he acts innocently."

As opposed to the doctrine of these decisions, counsel for
appellant call our attention to and rely particularly upon the
decision of Judge Cushman of our Federal court in *Columbia*

*Digger Co. v. Rector*, 215 Fed. 618, 628, wherein it seems to be held that, so far as its liability is concerned, the surety is entitled to have moneys in which it has an equity of the same nature as that of the surety here involved applied upon the debt for which it stands as surety, regardless of want of knowledge as to the source of the money on the part of the materialman and his good faith in applying it in satisfaction of another debt. The only decision therein cited which seems to be regarded by the court as directly in point upon this exact question, is that of *First Nat. Bank of Nashville v. National Surety Co.*, 130 Fed. 401, 66 L. R. A. 777, from which the following is quoted:

"Neither does the fact that the official receiving the payment was aware of the source of the money seem to have been regarded as material."

This language, standing alone, may seem to lend support to the conclusion reached by the learned Federal judge, but, upon an examination of the decision in which we find this quotation, we are unable to see that the announcement was made with the view of expounding the law upon this exact question with any degree of certainty. Indeed, the question does not seem to be involved in that case. Following the language above quoted we read:

"*State v. Smith*, 26 Mo. 226, 72 Am. Dec. 204, has also been cited by counsel for the bank as an authority supporting the general right of an official debtor to apply his payments on any one of two or more liabilities. But the Missouri court ruled that, if the treasurer receiving the payment knew that the money arose from current collections, the state would not be permitted to so apply it as to do a wrong to the security upon the current bond. This would seem to be a qualification commending itself to the conscience of a court by reason of principles of common honesty. But in the case at bar neither the debtor nor the creditor has made any appropriation, and the deposits made were of the money of the debtor, and unaffected by an equi-

3—92 WASH.

table charge in favor of either set of sureties, or the bank as the debtor."

Apparently that was a case where the application was to be made by the law, since neither the debtor nor the creditor made any application of the payment. Judge Cushman's decision was reviewed by Judges Gilbert, Ross and Rudkin in the Circuit Court of Appeals, and affirmed; Judge Rudkin dissenting. 227 Fed. 780. We are constrained to view Judge Rudkin's dissenting opinion as the correct interpretation of our former decisions, in so far as the question of knowledge of the source of the fund on the part of the creditor receiving payment therefrom is concerned.

It is worthy of note that, while appellant as surety had, in a sense, an equity in the money with which the heating company paid respondent, yet it is not true that the heating company unqualifiedly held this money in trust. The conditions of the bond upon which appellant is surety do not require the heating company to pay the debts secured by the bond with money which it is to receive from the school district. This is plain from the above quoted conditions of the bond. Nor is there anything in its contract with the school district or the statute requiring the heating company to pay its debts with that particular money. We are unable to see that the rights of the surety company are materially different from those of the contractor touching the application of the payment of this money. If the testimony introduced in behalf of respondent is true, then it becomes more a question of the manner and time of exercising the right now claimed by appellant as surety than of the existence of the right at the time the payment was made. It did no more towards having the application of the payment made in its interest than did the heating company, respondent's original debtor. We may assume that, if respondent had been informed as to the source of the money, it would have been unnecessary for appellant as surety to direct its payment in order to have the benefit thereof and thus les-

sened its liability upon the bond. This seems to be true because of the fact that, as between appellant as surety and respondent, there was only one debt. But if respondent was in fact not informed as to the source of the money and acted in good faith in applying it to another and older debt due from the heating company, it was acting within its legal rights, which then became fixed, both as against the heating company and appellant.

If it be suggested that appellant as surety, because of its want of knowledge of the receipt of the money by the heating company from the school district and the payment thereof to respondent, was deprived of the opportunity of directing its application, the answer is found in the fact that its principal, the heating company, was the one making the payment, and the one whom the conditions of the bond by their express terms contemplated should make the payment and without any requirement that it be made from any particular funds. The fact that the heating company might not pay its debts, or might use the money it received from the school district upon its contract other than by paying its debts secured by the bond, was one of the very hazards that appellant as surety assumed and was paid for when it executed the bond. The decisions from Massachusetts, Virginia, West Virginia and Michigan, above noticed, all deal with the rights of private sureties becoming such evidently without compensation. Manifestly, the doctrine of those courts argues even more strongly against appellant's contention in view of the fact that it is a paid surety.

Counsel for respondent call our attention to, and rely upon, our decision in *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 457, 144 Pac. 698, where our holding seems to be in effect that a creditor of a contractor, the debt being one incurred in the performance of his work and secured by a bond of this nature, may apply money paid to it by the contractor to a debt other than the one secured by the bond,

even though such creditor knows that the money paid to it came to the contractor in part payment of his contract. The writer of this opinion, being the writer of that one, feels free to criticise this holding in so far as that decision is susceptible of such interpretation. That case involved other important issues which were argued by counsel and examined by the court at great length and which almost wholly absorbed the attention of both counsel and the court. The question of the proper application of the credit there involved seems to have been almost lost sight of. It was presented to us with but little argument and without citation of our own or other decisions, and we disposed of it in an equally summary manner. Indeed, the knowledge on the part of the creditor as to the source of the money was not considered as a factor touching the right of the creditor to make application of the payment. We are now of the opinion, in view of these facts and in the light of the authorities we have here reviewed, that our holding in the *Gallucci* case should not now be regarded as establishing a rule of law permitting a creditor with knowledge of the source of money like that here involved to apply such money to a debt other than that secured by the bond while such debt secured by the bond remains unsatisfied. We therefore reach our conclusion here independent of the *Gallucci* decision and recognize the error of that decision in so far as it failed to recognize the doctrine of our former decisions in the light of the creditor's knowledge there involved.

We are of the opinion that the question of respondent's want of knowledge of the source from which the heating company acquired the $700, and respondent's good faith in making the application of the payment thereof upon the unsecured debt is a controlling issue in this case; and since, as we have seen, the evidence introduced in behalf of respondent tends to support its contention as to the facts touching this issue and the evidence thereon is at least conflicting, the superior court did not abuse its discretion in

granting respondent a new trial upon the ground of insufficiency of evidence. The order granting a new trial is affirmed.

ALL CONCUR.