SEEFELD v. DUFFER.†

(Circuit Court of Appeals, Fifth Circuit. May 16, 1910.)

No. 1,945.

1. COURTS (§ 359*)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION.

In determining the title of real estate, the federal courts are governed by the law of the state as to transfers and alienation, and the effect of decrees and judgments of the state courts and as to the construction of its statutes are controlled by the decisions of its highest court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939, 943; Dec. Dig. § 359.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 3, 1910.

2. Courts (§ 374*)—Federal Courts—Procedure of State Courts—Equi-
table Defenses in Actions at Law.

The rule that equitable defenses cannot prevail against the legal title
in the federal courts is not affected by the statutes of the state or the
procedure of its courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 981; Dec. Dig. §
374.*]

3. Public Lands (§ 172*)—Texas State Lands—Sale of Headright Certif-
icate by Administrator—Effect of Patent to Heirs of Decedent.

Where a headright certificate issued by the Board of Land Commis-
sioners of Texas was sold and transferred by the administrator of the
holder under an order of court, was located by the purchaser, and a pat-
ent issued in accordance with the usual practice to "the heirs" of the
decedent, their heirs and assigns, the purchaser acquired only the equita-
ble title to the land, the legal title passing to the heirs of the deceased.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 573; Dec.
Dig. § 172.*]

4. Judgment (§ 475*)—Collateral Attack—Probate Courts—Granting Ad-
ministration.

Where a probate court, having jurisdiction, has determined that admin-
istration upon the estate of a decedent was proper, and has issued letters
of administration and administered upon the property, no other court not
exercising appellate jurisdiction can correct its errors of judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 910; Dec. Dig.
§ 475.*]

5. Executors and Administrators (§ 29*)—Order of Appointment of Ad-
ministrator—Collateral Attack.

If an order appointing an administrator is so written as to leave it
doubtful in what estate the appointment is made, other parts of the pro-
bate record may be referred to for the purpose of removing the doubt,
and where it appears that the administrator qualified and acted in a par-
ticular estate and made final report and settlement, under the law of
Texas his authority cannot be questioned collaterally to invalidate a sale
made by him.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 178-182; Dec. Dig. § 29.*]

6. Judgment (§ 497*)—Collateral Attack—Courts of Probate Jurisdic-
tion.

Where the record of a court of general jurisdiction in probate matters
shows that the necessary steps were taken to invoke such jurisdiction in
a given case, or when the record is silent on the subject, the decrees of
the court are conclusive when collaterally called in question.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 937; Dec. Dig.
§ 497.*]

7. Injunction (§ 26*)—Restraining Action—Trespass to Try Title—Eq-
uitable Title.

In 1850 a county court of Texas, which was a court of general juris-
diction in probate matters, appointed an administrator of the estate of a
decedent, who under order of the court sold a land certificate which had
been issued in favor of decedent, the sale was approved and a conveyance
executed to the purchaser. He located the certificate and a patent was
issued in favor of the heirs of the decedent, but was delivered to and
recorded by the purchaser who with his grantees asserted ownership of
the land, exercised control over it and paid the taxes thereon for more
than 50 years, a part of the time being in open and notorious possession.
By Laws 2d Leg. Tex. c. 157, in force at the time, the administrator's
deed was prima facie evidence that all the requisites of the law had been
complied with in making the sale. *Held*, that the heirs of the decedent

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were not entitled after such lapse of time to assert the legal title as against such equitable title and that an action of trespass to try title brought by one of such heirs in a federal court would be enjoined.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 54, 57, 58; Dec. Dig. § 26.*]

8. EQUITY (§ 86*)—LACHES—GROUNDS OF BAR—RECOGNITION OF RIGHT BY ADVERSE PARTY.

Laches cannot be imputed to one in possession of land under an equitable title for delay in resorting to a court of equity for protection against the legal title so long as there is no attempt to assert such title, and he has no reason to anticipate such an attempt.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 232; Dec. Dig. § 86.*]

Appeal from the Circuit Court of the United States for the Western District of Texas.

In Equity. Suit by Herbert G. Seefeld against Mattie B. Duffer. Decree for defendant, and complainant appeals. Reversed.

C. L. Bates, Marshall Hicks, and Yale Hicks, for appellant.
F. Vandervoort, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a suit in equity to enjoin an action at law. The bill was filed by Herbert G. Seefeld, a citizen of Wisconsin, against Mattie B. Duffer, a citizen of Illinois. The subject of controversy is 640 acres of land situated in Dimmit county, formerly a part of Bexar county, Tex., and of value more than $2,000. The Circuit Court dismissed the bill, and the complainant appealed.

The action at law sought to be enjoined was trespass to try title brought by Mattie B. Duffer, the appellee, against Herbert G. Seefeld, the appellant. There is but little controversy as to the facts. Mrs. Duffer is an heir of John E. Jones, and claims the land as his heir. Seefeld's contention is that he has an equitable title to the land by virtue of proceedings in the probate court of Harris county, Tex., in the matter of the administration of John E. Jones' estate. Mrs. Duffer's contention is that the administration and the proceedings under which Seefeld claims are void. These contentions present the controlling question before us.

It is necessary to state the facts in detail in order to determine the law that should govern the case. On October 14, 1850, Jacob De Cordova presented his petition addressed to the Chief Justice of Harris county, praying for the appointment of an administrator of the estate of John E. Jones. The petition alleged that "John E. Jones, a citizen of Harris county, enlisted or joined the Mier expedition, and was killed in the assault upon the town of Mier; that he died without a will; * * * and that he is entitled to pay for services on said expedition." Notice of the application was given "as the law directs." The county court of Harris county, at the October term, 1850, granted the prayer of the petition by appointing Jacob De Cordova administrator. It was ordered at the same time that he file an inventory and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

give bond in double the amount of the appraisement. The questions as to the form and validity of this order will be more fully stated and considered later. On December 9, 1850, an inventory and appraisement of the "effects of the estate of John E. Jones, deceased," was filed, embracing "headright certe. for 640 acres, issued by the Coms. of Harris County," valued at $50, and a claim for "pay for services on the Mier expedition" for $350, valued at $87.50. J. De Cordova made oath to the inventory—that it "comprises all the property of the estate of John E. Jones," etc.—and gave bond as the administrator of John E. Jones, deceased, the bond reciting that he had been duly appointed. On March 24, 1851, on his application, an unconditional land certificate, No. 1,035, for 640 acres was issued by the Board of Land Commissioners of Harris county, Tex., to Jacob De Cordova, administrator of John E. Jones, deceased. On April 21, 1851, the said administrator presented his petition to the county court of Harris county, Tex., in which he alleged "that accounts against said estate to amount to one hundred and twenty dollars have been presented, that costs of court have accrued to amount of forty dollars, and that he has not sufficient means wherewith to pay the claims. He further represents that there remains to said estate headright claim of the decd. for 640 acres, 2nd class, issued by the Board of Land Coms. of Harrisburg, Harris county; the condl. certe. No. 985, dated Oct. 11, 1838; the unconditional No. 1035, dated 24 March, 1851." The petition concludes with a prayer "for an order to sell said headright, as also the land upon which the same may be located, as well as all grants for land to be made by virtue of said certificate of headright by the govt. of Texas to the said John E. Jones, or his heirs or legal representatives."

At the April Term, 1851, the court granted the order of sale as prayed for. On June 30, 1851, the said administrator made a report showing that, after giving proper notice, he had made the sale on June 3, 1851, pursuant to the order of the court, and that W. R. Baker was the highest bidder and purchaser at $20. The property sold is described as follows in the report of the sale:

"The conditional and unconditional headright certificate of John E. Jones, issued by the Board of Land Coms. of Harris (Harrisburg) county, for 640 acres, 2nd class; the condl. certe., dated Oct. 11, 1838, No. 985; the unconditional, dated March 24, 1851, No. 1,035; as also the land upon which the same has been located, as well as all grants of land to be made by the govt. of Texas by virtue of said headright to the said decedent, or his heirs or legal representatives."

The report of the sale was confirmed, and the administrator was directed to make conveyance to the purchaser, William R. Baker. On July 3, 1851, said administrator made deed in due form to William R. Baker, as directed by the court, which was recorded in Bexar county, Tex., on January 25, 1853. On November 5, 1851, said administrator filed his account for final settlement, which account was approved and the administration ended. After the purchase of the certificate by William R. Baker at the administrator's sale, as before stated, he had the land located under the certificate surveyed, and applied to the

state of Texas for, and obtained, a patent for the land. The patent was not issued to Baker as the transferee of the certificate, but was issued to "the heirs of John E. Jones, dec'd., their heirs or assigns," as was the usual practice of the Texas Land Office at that time. The patent was delivered to Baker and filed by him for record January 25, 1853, and was recorded June 22, 1853, in Bexar county, Tex., where the land was located. The patent was returned to Baker after it was recorded, and was held by him till his death, when it was found among his papers by his executors. On December 6, 1899, Baker's executors sold and conveyed the land to J. H. Burnett, and Burnett's heirs, he having died, sold and conveyed it to B. Vesper, and Vesper sold and conveyed it to Herbert G. Seefeld, the complainant. Mattie B. Duffer, relying on the legal title vested in her by the patent, she being an heir of John E. Jones, sued at law for the land. Herbert G. Seefeld, relying on his equitable title arising from his purchase of the certificate at the administrator's sale, and on the facts above stated, sues in equity to enjoin the action at law. The decree dismissing the bill is assigned as error.

1. In deciding this case, so far as it involves the construction of statutes of the state of Texas, we are controlled by the decisions of the court of last resort in that state; and we, of course, look to the law of the state in which the land is situated for the rules which govern its transfer and alienation, and the effect to be given decrees and judgments affecting titles. Simpson County v. Wisner-Cox Lumber & Mnfg. Co., 170 Fed. 52, 95 C. C. A. 227. But, so far as the practice or procedure in equity is concerned, the case is not controlled by the rules of the Texas courts. The distinction in procedure between actions at law and cases in equity being abolished in Texas does not affect the rule that equitable defenses cannot prevail against the legal title in an action at law in the federal courts held in Texas. This made it necessary for the complainant to resort to equity. 1 Bates on Federal Equity Procedure, § 20.

2. The land certificate was transferred to Baker before its location. It was subsequently located by Baker, but the patent was issued, as before stated, to the heirs of John E. Jones, deceased. Assuming, for the present, that the administrator's sale of the certificate was valid, Baker obtained only an equitable title to the land, the legal title passing by the patent from the state of Texas to the heirs of John E. Jones. Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Abernathy v. Stone, 81 Tex. 430, 16 S. W. 1102.

3. The Texas statutes in force when the letters of administration were granted conferred jurisdiction on the county court to grant letters in the county where the deceased had resided, or in the county where his principal property was at the time of his death, or in the county where he died. Laws 2d Legislature of Texas, vol. 2, c. 157, p. 235. No criticism is made as to the petition for letters of administration filed by De Cordova, except it is claimed that "the petition disclosed no other assets for administration than a claim against the state of Texas, invalid by terms of the law." We do not deem it incumbent on us to consider the question whether or not the claim re-

ferred to in De Cordova's petition was valid or invalid. The allegation was made that decedent "was entitled to pay for his services in said expedition," referring to the Mier expedition. The court, in granting the letters of administration, held that he was so entitled, or, at least, that an administration was necessary or proper. If the jurisdiction of the court to grant the letters was dependent on there being assets of the estate of John E. Jones, it is upheld, so far as assets are concerned, by the record. It appears from the inventory and appraisement, and from the final settlement of the estate, that assets of the estate were received by De Cordova as administrator, and that $140 of the assets was realized from a sale of a certificate of public debt of Texas granted to the deceased for his services. The record is quite sufficient to show that there were assets belonging to the estate. It is true that there were circumstances connected with this administration that should have made the probate court scrutinize the application, and it may be that the grant of letters should have been refused; but after that court has determined that administration was proper, no other court not exercising appellate jurisdiction can correct its errors of judgment. Martin v. Robinson, 67 Tex. 368, 3 S. W. 550.

4. The main defense presented to the bill is an attack upon the validity of the decrees of the probate court. It is not a direct attack, instituted for the purpose of correcting, vacating or enjoining those decrees. The attack is indirect or collateral, by way of defense—an attempt to avoid the binding force of the decrees in a proceeding not instituted for that purpose. The decrees of the court granting letters, ordering the sale, and confirming the sale, cannot be successfully attacked collaterally upon any evidence or suggestion outside of the record. The only relief permitted against the erroneous or improper determination of the questions settled by the decrees is found in a direct attack on them in a proceeding brought for that purpose. Crawford v. McDonald, 88 Tex. 632, 33 S. W. 325. If the decrees are not merely erroneous and voidable, but absolutely void, they would be subject to collateral attack, and they could not be held to be the basis of legal rights.

5. The printed record before us shows that the transcript of proceedings in the administration of John E. Jones' estate was taken from two books of the probate records. The practice was to enter the decrees as they were made in the estates administered in a minute book; and after each estate was settled, all the decrees relating to that estate were entered together in a record book. The complainant exhibited with his bill a transcript from the record book which showed the orders in the administration of the estate of John E. Jones separately, and they therefore appeared as relating to his estate alone. The defendant, in her answer to the bill, presented a transcript from the minute book, showing that the orders were there entered in a manner that apparently made them relate to several estates. The order, taken from the minute book, appointing De Cordova administrator, is as follows:

"County Court Oct. Term, October 28, 1850.

"Est. Amos Eadron.
   "   James Robertson.
   "   John E. Jones.
   "   Cyrus T. Ward.
   "   Thos. L. Jones.
   "   Jno. D. McAllister.
   "   Geo. Alexander.
   "   James D. Cocke.
   "   Wm. M. Watrous.
   "   George Mason.
   "   Dennis Sullivan.

"The petition of Jacob De Cordova for administration of this estate coming up for consideration, and it appearing to the court that legal notice of this application has been given as the law directs, and no one appearing to contest or oppose the same, it is ordered, adjudged and decreed by the court that Jacob De Cordova be and he is hereby appointed administrator of this estate with full power as such subject to the orders and decrees of the court.

"It is further ordered that he file an inventory of the property belonging to said estate duly valued under oath by who are hereby appointed appraisers for the purpose. It is ordered that he file a bond in double the amount of the appraisement with securities to be approved by the court. It is further ordered that thereupon letters of administration issue, and further ordered that the business of this estate be continued."

The contention of the appellee is that this order is void and subject to collateral attack, because it purports to appoint De Cordova administrator of one estate out of eleven, without stating which estate. The appellee relies on the case of Harwood v. Wylie, 70 Tex. 543, 7 S. W. 789, to sustain this contention. The court, in effect, said in that case that an order of the probate court granting letters of administration upon one estate out of a number, without stating which one, will apply to none of them. The decree was held subject to collateral attack. But there were other grounds upon which the conclusion was reached. The administration was not taken out in the county where the statute declared it should be, but in a remote county where the parties interested in the estate had no reason to expect it. An examination of the case will show many irregularities in the procedure of the probate court, which led the commission of appeals to the conclusion that the decrees in that case were open to collateral attack. In a later case— Grant v. Hill, 44 S. W. 1027—the Court of Civil Appeals of Texas had under consideration orders of the probate court granting letters of administration, ordering a sale of the headright of deceased, and confirming the sale. Each order had at its head or commencement the names of from two to ten different estates, and in the application for the order of sale, the name of the estate in question appeared in the center of the list of estates. The orders were held valid. The Supreme Court of Texas, without a written opinion, refused to grant a writ of error.

In Templeton v. Ferguson, 89 Tex. 56, 33 S. W. 333, it was contended that the lower court erred in not holding the administration void because "the application was made for administration on three estates in one petition and granted in one order." The court, by Denman, J., said:

"This was a mere error in procedure, which cannot affect the validity of the proceedings in this collateral attack. It is well settled that where a court of general jurisdiction, in the exercise of its ordinary judicial functions, renders a judgment in a cause of which it has jurisdiction, such judgment is never void, no matter how erroneous it may appear from the face of the record or otherwise to be."

If the order granting letters is so written as to make it doubtful whether De Cordova was appointed administrator of the estate of John E. Jones, it is permissible to refer to other parts of the probate records to remove the doubt. Crawford v. McDonald, supra. The record shows that he qualified and gave bond as administrator of the estate of John E. Jones, returned an inventory and appraisement of the property of the estate, made reports, and performed all the usual duties incumbent on an administrator, including a final settlement of the administration. After the probate court had so recognized one as administrator, it has been held by the Court of Civil Appeals of Texas that, even if he had not been appointed, his authority could not be called in question collaterally to invalidate a sale made by him. Saul v. Frame, 3 Tex. Civ. App. 596, 22 S. W. 984, 987.

The record shows without dispute that more than half a century ago Baker obtained the equitable title to the land; that under his claim of title he asserted ownership and exercised control over the land, and paid regularly all state and county taxes levied on it till his death; and that thereafter it was assessed to his lawful representatives till it was sold to Burnett, who paid the taxes till his death, and that it was assessed to his legal representatives till they sold it to Vesper, when it stood assessed in his name till conveyed to the complainant. The tenants of Baker's heirs held the land under fence for about six years. During all this time—a period of more than half a century—Baker's muniments of title were of record, and the records of the probate court showing the administration and the sale of the headright stood unattacked. The purchaser having complied with the terms of the sale, the deed made by De Cordova, as administrator, to Baker on July 3, 1851, was, by law in force at the time, made prima facie evidence that all the requisites of the law had been complied with in making the sale. Laws 2d Legislature of Texas, p. 257. The court granting the letters and ordering the sale had jurisdiction over all matters relating to the administration of the estates of decedents. As to such matters, it was a court of general jurisdiction. When it assumes to exercise it in a given case, all presumptions are in favor of the validity of its proceedings. When the record shows that the steps necessary to clothe the court with power to act in the given case were taken, or when the record is silent on the subject, the decrees of the court must be held conclusive when collaterally called in question. Martin v. Robinson, supra. This is a rule of public policy necessary to protect the interests of those relying on judicial proceedings. There is certainly no reason for relaxing the rule or refusing to observe it in this case when the complainant and those under whom he claims have relied on the decrees without interruption for more than 50 years.

6. The appellee contends that the appellant was not entitled to relief because of laches; that Baker and those claiming under him asserted ownership under his muniments of title for more than 50 years; and that no reason is shown why a suit was not sooner brought asserting the equitable title and seeking to obtain the appellee's legal title. Whether the lapse of time is sufficient to bar relief in equity is dependent on the facts of each particular case. Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383. So far as the record shows, Baker's claim to the land was not disputed in his lifetime, nor was the right of his executors, or their vendee. No objection was made to their possession of the land, which, for a period of several years, was open and notorious. The first intimation of a claim on the part of the heirs of Jones that the administrator's sale was invalid was when the action at law was brought by the appellee for the land January 16, 1897. It does not appear when process was served in this action on the appellant, but he filed his bill to enjoin the action at law on February 17, 1909. Laches cannot be imputed to one in possession of land under an equitable title for delay in resorting to a court of equity for protection against the legal title. The bill was filed when notice was given of the appellee's adverse claim by the suit at law. That was sufficient to protect the appellant against the plea of laches, as expressly ruled in Ruckman v. Corey, 129 U. S. 387, 9 Sup. Ct. 316, 32 L. Ed. 728, and Brainard v. Buck, 184 U. S. 99, 109, 22 Sup. Ct. 458, 46 L. Ed. 449.

A decree will be entered here, perpetually enjoining the action at law, and vesting the legal title to the land in the complainant.

Reversed.