COLUMBIA DIGGER CO. v. RECTOR et al.

(District Court, W. D. Washington, S. D. July 14, 1914.)

No. 1218.

1. COURTS (§ 23*)—DISMISSAL AND NONSUIT (§ 65*)—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP.

Where necessary diverse citizenship does not exist, federal jurisdiction based on such ground cannot be conferred by the consent of the parties, and the court on its own motion will dismiss the action when it appears to it that the necessary jurisdictional fact does not exist.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 75, 75½, 81; Dec. Dig. § 23;* Dismissal and Nonsuit, Cent. Dig. § 160; Dec. Dig. § 65.*]

2. COURTS (§ 308*)—FEDERAL COURTS—DIVERSE CITIZENSHIP.

Requisite diversity of citizenship, in order to establish federal jurisdiction, does not exist when one of the defendants is a citizen of the same state as plaintiff.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 855, 856; Dec. Dig. § 308.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. COURTS (§ 315*)—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP—PARTNERSHIP.

Where a partnership is sued in a federal court and jurisdiction depends on diversity of citizenship, each of the members of the partnership must have the requisite citizenship, to give the court jurisdiction; it being neither conferred nor withheld by reason of the state of the partnership's organization, or in which it conducts business, nor is there any presumption therefrom that the members are citizens of that state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 861; Dec. Dig. § 315.*]

4. COURTS (§ 322*)—FEDERAL COURTS—LIMITED JURISDICTION—RECORD.

Federal courts being courts of limited jurisdiction, jurisdictional facts must be made to appear clearly and distinctly, either by pleadings or the record.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. § 322.*]

5. COURTS (§ 322*)—FEDERAL COURTS—DIVERSE CITIZENSHIP—ALLEGATION.

A complaint in a federal court, alleging that certain defendants, copartners, were "of" the city of Vancouver, state of Washington, did not allege that they were citizens of Washington, or that that state was more than their temporary place of sojourn.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. § 322.*]

6. COURTS (§ 343*)—FEDERAL COURTS—PROCEDURE—STATE LAWS.

The common-law rule that plaintiff, in an action on a bond, might sue all the parties jointly or each severally is modified by Rem. & Bal. Code, § 192, providing that persons severally liable on the same obligation or instrument may all or any of them be included in the same action at plaintiff's option, which statute controls federal courts sitting in Washington as to who are necessary parties in an action on a bond, so that in such action the principals are not indispensable parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 915, 916, 919, 920; Dec. Dig. § 343.*]

7. COURTS (§ 318*)—FEDERAL COURTS—JURISDICTION—PARTIES—CITIZENSHIP—DISMISSAL.

Where, in a suit against contractors and their sureties, jurisdiction depended on diversity of citizenship, but the complaint did not sufficiently allege the citizenship of the contractors, complainant was entitled to cure the defect by dismissing as to them.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 863; Dec. Dig. § 318.*]

8. PAYMENT (§ 63*)—DEFENSE.

Payment is matter in bar and not in set-off, and particular appropriations of payment, and objections to appropriations, may be made under such defense.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 152–161; Dec. Dig. § 63.*]

9. PAYMENT (§ 63*)—PLEA—EVIDENCE.

Under a plea of payment, any matter may be given in evidence tending to show payment, so that evidence of erroneous application of payments may be introduced at law.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 152–161; Dec. Dig. § 63.*]

10. PLEADING (§ 428*)—OBJECTIONS—WAIVER.

Where a defense of misapplication of payments was not objected to before trial on the ground that it was an equitable defense and could not be pleaded at law, and plaintiff stipulated to a waiver of a jury, its right

to object to evidence of such misapplication, on the ground that the defense was equitable, was waived.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1433–1436; Dec. Dig. § 428.*]

11. PRINCIPAL AND SURETY (§ 113*)—PAYMENT—DISCHARGE OF SURETY.

Where contractors made payment for certain materials, and directed the creditor to apply the same on materials purchased for a particular work, such payment operated instanter to discharge the liability of the contractors' sureties therefor pro tanto, and, while the creditor and the contractors might thereafter as between themselves change the application of such payment, it would not revive the extinguished obligation of the sureties.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 235–239; Dec. Dig. § 113.*]

12. PAYMENT (§§ 38, 39, 41*)—APPLICATION.

In general, a debtor is entitled to direct how payments shall be applied, but if he omits to do so, the creditor may make such application as he desires, and if both omit to make any application, the law will apply the payments according to its own notion of justice.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 99–103, 104–114, 115–120, 128; Dec. Dig. §§ 38, 39, 41.*]

13. PRINCIPAL AND SURETY (§ 113*)—PAYMENTS—APPLICATION—RIGHTS OF SURETY.

Where defendants became sureties on a bond of certain contractors for the construction of a public improvement, they were equitably entitled to have the installments of the price paid by the municipality applied to the payment of bills for materials, and materialmen, receiving payments with knowledge that the money was a part of the proceeds of the work, were not bona fide purchasers, but were bound as to such sureties to apply the payments to the indebtedness of the contractors for the materials used on that particular work, in accordance with the contractors' direction.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 235–239; Dec. Dig. § 113.*]

14. SALES (§ 82*) — CONSTRUCTION OF CONTRACT — TIME OF PAYMENT — "AS SOON AS."

Where a contract for the purchase of sand and crushed rock provided that plaintiff should be paid cash for the sand and gravel, and for the crushed rock as soon as the contractor got his money from the improvement of B. street, the clause "as soon as he got his money" meant immediately on receiving the money, so that the contractor was not entitled to delay payment until he got "all" of his money, but required that he make the payment as soon as he obtained "the money" or sufficient money. (Citing Words and Phrases, vol. 1, p. 527).

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 229–233; Dec. Dig. § 82.*]

15. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIEN.

The state has power to regulate rights in its soil, to deny a lien where the soil is that of a municipal corporation, and to provide that in such case a bond shall be exacted to take the place of the lien.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

16. COURTS (§ 365*)—FEDERAL COURTS—RULES OF DECISION—STATE LAW.

The rights and equities incident to bonds given by a municipal contractor to secure performance of contracts for public improvements being affected by the public policy of the particular state, the declaration of the highest court of the state concerning such rights, equities, and policy will

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be regarded as rules of decision by the federal courts sitting in such state, unless directly opposed to higher federal authority.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. § 365.*]

At Law. Action by the Columbia Digger Company against A. B. Rector and another, doing business as Rector & Daly and others. Judgment for defendants.

Plaintiff relies upon the following authorities: Crane Co. v. Pacific Heat & Power Co., 36 Wash. 95, 78 Pac. 460; Getchell & M. Lumber & Mfg. Co. v. Peterson, 124 Iowa, 599, 100 N. W. 550; Cain v. Vogt, 138 Iowa, 631, 116 N. W. 786, 128 Am. St. Rep. 216; Board of Com'rs v. Citizens' Bank, 67 Minn. 236, 69 N. W. 912; Thomason v. Keeney, 8 Ga. App. 852, 70 S. E. 220; Schwartz v. Gerhardt, 44 Or. 425, 75 Pac. 698; George H. Sampson Co. v. Com., 208 Mass. 372, 94 N. E. 473; Cohnfeld v. Tanenbaum, 176 N. Y. 126, 68 N. E. 141, 98 Am. St. Rep. 653; Bross v. McNicholas, 66 Or. 42, 133 Pac. 782; Lowe v. Jones, 192 Mass. 94, 78 N. E. 402, 6 L. R. A. (N. S.) 487, 116 Am. St. Rep. 225, 7 Ann. Cas. 551; Grafton v. Reed, 34 W. Va. 172, 12 S. E. 767; Merchants' Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624; Thacker v. Bullock Lumber Co., 140 Ky. 463, 131 S. W. 271; Beutler v. Grand Trunk Ry., 224 U. S. 85, 32 Sup. Ct. 402, 56 L. Ed. 679; Liverpool Steam Co. v. Phœnix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788; Merc. Trust Co. v. St. L. S. F. Ry. Co,, 99 Fed. (C. C.) 485.

Defendants Sparks and Blurock, cite the following authorities: Mirabile Corp. v. Purvis (C. C.) 143 Fed. 920; Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179; Smith et al. v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635; Hooe v. Jamieson, 166 U. S. 395, 17 Sup. Ct. 596, 41 L. Ed. 1049; Excelsior Pebble Phosphate Co. v. Brown, 74 Fed. 321, 20 C. C. A. 428; Anderson v. Watt, 138 U. S. 694, 11 Sup. Ct. 449, 34 L. Ed. 1078; United States v. Kirkpatrick, 9 Wheat. 720 (6 Curtis, 244) 6 L. Ed. 199; Jones v. United States, 12 L. Ed. 870, 7 How. 681 (17 Curtis, 349); United States v. January, 7 Cranch, 572 (2 Curtis, 673), 3 L. Ed. 443; United States v. American Bonding & Trust Co. (C. C.) 89 Fed. 921, 925; 30 Cyc. 1240; Thompson v. Phelan, 22 N. H. 339; Merrimack County Bank v. Brown, 12 N. H. 320; 8 Cyc. 380; Willis v. Wozencraft, 22 Cal. 608; Cummings v. Neb., 101 U. S. 153, 25 L. Ed. 903; Equity Rule 23 (198 Fed. xxiv, 115 C. C. A. xxiv), Enc. of U. S. Sup. Ct. Rpts., vol. 5, p. 826, and cases cited; section 1159, Rem. & Bal. Code.

Giltner & Sewall, of Portland, Or., for plaintiff.

Miller, Crass & Wilkinson, of Vancouver, Wash., for defendants Sparks and another.

CUSHMAN, District Judge. Plaintiff, an Oregon corporation, sues the defendants for material furnished defendants Rector & Daly, and used by them in a street improvement in Vancouver, Wash. The defendants Sparks and Blurock were sureties upon the bond of Rector & Daly, given to the city for the performance of the work, which bond was also for the benefit of materialmen. The complaint alleges that, after entering upon the performance of the contract, Rector & Daly abandoned it and turned it over to their sureties, with all their rights thereunder; that the sureties completed the contract, and received, in money and bonds, from the city of Vancouver, $11,633.98. The sureties answer, denying the receipt of anything in excess of $9,158.70, and alleging the expenditure of this amount in completing the contract. They further allege that,

under the agreement between the plaintiff and the contractors, Rector & Daly, it was provided that payments made from time to time from the street improvement should be credited, by plaintiff, to the general, unsecured indebtedness of Rector & Daly, and that plaintiff would look to the sureties, Sparks and Blurock, for its pay for the material furnished for this particular improvement; that the sureties were ignorant of this arrangement; that it was carried out and constitutes a fraud upon the sureties; that the amount so paid plaintiff exceeds the amount claimed by it for material furnished; that it had been fully paid for such materials from money derived from the improvement; that Rector & Daly have been adjudged bankrupts, and, if the sureties are compelled to pay this claim, they will be unable to recover from them. The cause was tried to the court, upon stipulation without a jury. After the trial, a question was raised as to the court's jurisdiction, which is based upon the diverse citizenship of the parties. Plaintiff is an Oregon corporation. The defendants Sparks and Blurock are alleged to be citizens of the state of Washington. The allegation of the complaint as to Rector & Daly is:

"That the defendants A. B. Rector and Charles Daly are and were at all the times herein mentioned copartners doing business under the firm name and style of Rector & Daly, and engaged in a general contracting business in the city of Vancouver, county of Clarke, state of Washington."

The following general propositions are well settled:

[1] Where the necessary diverse citizenship does not exist, jurisdiction cannot be conferred by the consent of the parties.

The court, on its own motion, will dismiss the action when it appears to it the necessary diverse citizenship does not exist.

[2] The requisite diverse citizenship does not exist when one of the defendants is a citizen of the same state as the plaintiff.

[3] Each of the members of a partnership must have the requisite citizenship to give the court jurisdiction, and it is neither conferred nor withheld by reason of the state of the partnership's organization, or in which it conducts business. Nor does any presumption arise therefrom that the members of the partnership are citizens of said state. Carnegie, Phipps & Co. v. Hulbert, 53 Fed. 10, 3 C. C. A. 391; Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800; Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, 20 Sup. Ct. 690, 44 L. Ed. 842; Ralya Market Co. v. Armour & Co. (C. C.) 102 Fed. 530 (third syllabus); Bruett & Co. v. Austin D. E. Co. (C. C.) 174 Fed. 668 (second syllabus).

[4] This court being one of limited jurisdiction, the jurisdiction must be made to appear clearly and distinctly, either by the pleadings or the record. Chapman v. Barney, 129 U. S. 677, 681, 9 Sup. Ct. 426, 32 L. Ed. 800; Robertson v. Cease, 97 U. S. 646, 649, 24 L. Ed. 1057.

[5] The complaint sets out, as an exhibit, a copy of the contract between Rector & Daly and the city of Vancouver, in which it is provided:

"This agreement made and entered into this 6th day of May, A. D. 1911, by and between A. B. Rector and Charles Daly, copartners doing business un-

der the firm name and style of Rector & Daly, both of the city of Vancouver, county of Clarke, and state of Washington. ⁂ ⁂ ⁂"

The exhibit, although a part of the record, does not furnish the necessary allegation of citizenship. To say one is "of" a place is neither to allege temporary residence nor such residence as to show a domicile, which latter it would have to do in order to aver the necessary citizenship. Horne v. Hammond Co., 155 U. S. 393, 15 Sup. Ct. 167, 39 L. Ed. 197.

[5] The bond sued on is the joint and several bond of the defendants. At common law, the plaintiff, suing on such an obligation, might sue all the parties jointly or each severally (9 Cyc. 708 [3]). The common law in this respect is modified in the state of Washington by section 192, Rem. & Bal. Code., which provides:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, may all, or any of them, be included in the same action, at the option of the plaintiff." Pacific Bridge Co. v. U. S. F. & G. Co., 33 Wash. 47, 73 Pac. 772.

Such a statute, under the Conformity Act (Act June 1, 1872, c. 255, § 5, 17 Stat. 197, section 914, Rev. St. 4 Fed. Stat. Ann. 563 [U. S. Comp. St. 1901, p. 684]), controls in this court as to what parties are necessary. Sawin, Adm'r, v. Kenny, 93 U. S. 290, 23 L. Ed. 926. Rector & Daly are therefore not indispensable parties. Hicklin v. Marco, 56 Fed. 549, 6 C. C. A. 10.

"The obligation assumed by the surety in such cases is coextensive with that of the principal debtor, and if the plaintiff sees fit to sue the surety, together with the principal, in a suit brought to enforce the obligation, the presence of the surety upon the record cannot be ignored, in an application made to remove the case to the federal court, on the theory that the surety is merely a nominal party." Mut'l Reserve Fund Life Ass'n v. Farmer, 77 Fed. 929, 931, 23 C. C. A. 574, 577.

"Where defendants' liability is joint as well as several, and plaintiff elects to sue them jointly, this determines the character of the suit; and neither defendant can treat it as several against him, so as to authorize him to remove it." Moore v. Los Angeles Iron & Steel Co. (C. C.) 89 Fed. 73; Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161, 29 L. Ed. 331; Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528.

[7] The defendants Rector & Daly are not only named as defendants in the complaint in the case at bar, but summons was sued out, directing them to appear and defend. Summons was never served on them.

"It is a general rule, except when it has been otherwise provided by statute, that the action is deemed commenced, so far as the parties to it are concerned, from the time the writ or summons is sued out." 1 Cyc. 747.

In Washington, actions are commenced by the service of summons, or the filing of the complaint with the county clerk, as clerk of the court. 1 Rem. & Bal. Code, § 220. With the action in this situation, it would appear that all that is necessary, if aught is necessary to oust the court of jurisdiction, would be for one of the defendants, Rector or Daly, to appear herein, providing he were a citizen of Oregon, which, in the absence of other allegation, will be presumed. Thus would the court's jurisdiction be jeopardized to the moment of judgment, a most

weak and unsatisfactory position. The mere fact that the record does not show service of summons upon Rector and Daly does not necessarily have the same effect as an affirmative showing upon the record that they have been dismissed from the action, for, as long as not dismissed, the summons remains an invitation, if not a command, for them to appear, which would not be the case after a dismissal.

Upon the suggestion of want of jurisdiction, after hearing the evidence and arguments upon the issues made on the merits by the pleadings, the plaintiff now has moved to dismiss as to Rector & Daly. This renders it unnecessary to determine the effect upon the jurisdiction of no service being shown upon such parties.

While Chief Justice Marshall, in Conolly v. Taylor, 2 Pet. 556, 7 L. Ed. 518, announced the rule to be that, where the bill failed to show jurisdiction by omitting to state the character of the parties, while the court could not exercise jurisdiction while the defect remained, yet "it might be corrected at any time before the hearing," it is clear that this was a careful statement of the doctrine only as far as the needs of that case required it to be announced. By later cases such amendments have been allowed upon the entry of the final decree, and even after reversal by the Appellate Court and remand. Carneal v. Banks, 10 Wheat. 181, 6 L. Ed. 297; Tug River Coal & Salt Co. v. Brigel, 86 Fed. 818, 30 C. C. A. 415; Grove v. Grove (C. C.) 93 Fed. 865; Holloway & Bro. v. White-Dunham Shoe Co., 151 Fed. 216, 80 C. C. A. 568, 10 L. R. A. (N. S.) 704.

The motion to dismiss is granted, and the court held to have jurisdiction of the cause between the remaining parties.

[8] Upon the trial, plaintiff objected to any testimony to support the defense that the payments made by Rector & Daly should be applied in reduction of defendants' obligation, as sureties, on the ground that it was an equitable defense and in the federal court, could not, for that reason, be made in a law action. The defense of payment is a matter in bar and not set-off. 30 Cyc. 1252A. Particular appropriation of payments and objections to appropriations of payments may be made under this defense. 30 Cyc. pp. 1253 (2) and 1254.

[9] Under a plea of payment, any matters may be given in evidence which tend to show payment. 30 Cyc. 1260.

In making application of payments, the principles of equity are recognized at law, so far as the nature of the proceeding will admit. 30 Cyc. 1240 (3).

Among the decisions, the only exception to the foregoing general rule appears to be certain of those of the state of Pennsylvania. 30 Cyc. 1260, note 81.

In Steiner, Adm'r, v. Erie Dime Sav. & Loan Co., 98 Pa. 591, it was held, in a suit by a bank against the surety upon a promissory note, where the defendant pleaded payment, that defendant could not offer in evidence the bank book of the principal debtor to show deposits made by the latter in the bank after the maturity of the note, in excess of the amount due thereon; defendant's contention being that plaintiff was bound to appropriate the deposits in payment of the note, and its failure to do so relieved defendant from liability. Covely v. Fox, 11

Pa. 171, and other cases of that court are along the same line. These decisions are based upon a Pennsylvania statute providing for defenses of payment and "payment with leave," that is, leave of court. In case of the latter defense, a notice is required to be served in the nature of a bill of particulars, informing the plaintiff of the exact nature of the defense. Under this statute and the court rule promulgated under it, evidence of technical payment only was held admissible under the general plea of payment. The existence of this statute is itself an argument for allowing, in the absence of its like, defense of a more or less equitable nature under a plea of payment, else why the necessity of the statute? It is upon these cases that the text (16 Encyc. Pl. & Pr. 215) is based, to the effect that "evidence of merely equitable defenses is not, as a rule, admissible under a plea of payment."

As pointed out by Judge Lurton in First National Bank v. National Surety Co., 130 Fed. 401, 64 C. C. A. 601, 66 L. R. A. (N. S.) 777, the principles controlling courts in the application of payments have not been clearly defined. While what would constitute an equitable defense, not to be interposed in a law action in a federal court, may not be definitely determined, it is clear from many federal decisions, including, from the Supreme Court, United States v. Eckford's Executors, 1 How. 250, 11 L. Ed. 120, United States v. Kirkpatrick, 9 Wheat. 720, 6 L. Ed. 199, and United States v. January, 7 Cranch, 572, 3 L. Ed 443, that a defense, by a surety, as to an improper application of payments by the creditor, has frequently been upheld in a law action. The courts in this circuit, recognizing the rule forbidding equitable defenses at law, do not appear to have gone further in enforcing the rule than to exclude such defenses where it was sought to establish fraud preceding or coincident to the execution of the instrument made the basis of suit or claim. Hill v. N. P. Ry. Co., 113 Fed. 914, 51 C. C. A. 544; Mahr v. U. P. R. Co., 170 Fed. 699, 705, 96 C. C. A. 19; Standard Portland Cement Co. v. Evans, 205 Fed. 1, 4, 125 C. C. A. 1; Cook v. Fidelity & Deposit Co., 167 Fed. 95, 101, 92 C. C. A. 547; Price v. Connors, 146 Fed. 503, 505, 77 C. C. A. 17; Seefeld v. Duffer, 179 Fed. 214, 103 C. C. A. 32.

[10] While recognizing that allegations of fraud in securing a release constitute an equitable defense, it is a matter of everyday practice to permit in evidence, in law actions, evidence of the release of a joint tort-feasor, as relieving from liability the cotort-feasor, which is but an effect that flows from the release, itself. It is therefore held that the defense interposed is not objectionable as an equitable defense, and that plaintiff, not raising any objection to the defense as pleaded in the answer, but awaiting the offer of testimony before objecting, coupled with the stipulation waiving a jury and for the trial of the issues to the court, constituted a waiver of such objection.

The controlling issues of fact are: Was the money paid to the plaintiff by Rector & Daly realized from the work done under the contract secured by defendants' bond; and, if it was, did plaintiff know it was realized from such work? Further, how was the money actually applied to the payment of the debts owing plaintiff by Rector & Daly?

The controlling questions of law to be applied to these facts are: If the money paid the plaintiff was realized from the work secured

under the contract, will it be applied in payment for the crushed rock furnished Rector & Daly by plaintiff? and whether it is necessary to show that the plaintiff knew it was realized from such source before such application will be made. ·

The contract for the improvement provided:

"Second party agrees to pay said parties of the first part for the said materials and labor in the manner following, namely * * * Said prices to include all material and labor expended in connection with this work by said parties of the first part; payments under the contract are to be made by said second party every thirty days on estimates furnished by the city engineer in charge of the work. Twenty per cent. of the estimates shall be withheld until the contract is fully completed and accepted by the city.

"The party of the second part is to issue local improvement bonds on the local improvement fund for said local improvement district of said city for all sums of money to be. paid to said parties of the first part under this contract, and said parties of the first part herein agree to receive and accept said local improvement bonds for all sums of money which they are to receive from said party of the second part under this contract."

The bond provided:

"If the said contractors Rector & Daly shall well and faithfully perform all of the covenants and conditions in said contract mentioned and shall pay all claims for labor and work or material on account of subcontractors, materialmen, laborers and mechanics furnishing labor and material under said contract, then this obligation shall be void, otherwise to remain in full force and effect."

The contractors, Rector & Daly, arranged with the Vancouver Trust & Savings Bank, about the time of beginning the performance of the contract, for money to carry it on. They assigned to the bank their rights under the contracts with the city, giving the bank an order upon the city for the bonds to be issued. The bank was to advance money as the work progressed upon the estimates of work done, from which the amount earned could be computed. The admitted payments in question exceed the amount claimed by the plaintiff in its suit against the defendant sureties. These payments were made by checks of Rector & Daly against their general account in the bank; but it is shown in the case of each check, except as hereafter pointed out, that the money with which the check was paid was obtained upon notes given the bank by Rector & Daly. These notes were secured, collaterally, by the assignment of the rights of Rector & Daly against the city under the contract made with it. This collateral was never redeemed. Bonds of the city were turned over to the bank under the assignment in an amount in excess of the payments made to plaintiff. Upon each occasion when a note was given to the bank, the account of Rector & Daly was either overdrawn or had a comparatively small balance. Upon each occasion the note and the credit given by the bank exceeded the amount of the check paid out of such credit. Upon the presentation of one of these checks payment was refused and the proffered note not accepted until additional security, consisting of a sight draft, was given. Nothing was ever realized upon this draft.

One of the checks, amounting to $859.90, was given at a time when the account was overdrawn $2,565,45. Before the check was cashed, the bank took a note of Rector & Daly for $2,079.40, and to secure it,

an estimate, under the assignment, upon the work in question, of $574.20, and estimates under other contracts which Rector & Daly had with the city of $990.40, and $514.80. If only $574.20 of this credit be allowed defendants, yet with the other checks given, where the notes were not complicated with other securities than that upon the work in question, the credits would still exceed plaintiff's asserted claim. Rector & Daly, during the period in question, gave the bank other notes and made a great number of other checks and deposits upon, and in their general account.

The foregoing is sufficient to show the substantial identity of the money paid plaintiff with that realized by Rector & Daly under their contract with the city. Plaintiff contends that it was not realized from this work, that the money paid plaintiff was raised by Rector & Daly upon their credit, and that no money was paid by the city until long after the payments to plaintiff. If such an exact identity in a fund were ever required, it would be seldom attained. If this money advanced to Rector & Daly was not realized from this work, then Rector & Daly never obtained any money under it, yet they had and disbursed thousands of dollars advanced upon the obligations for that work and so realized under it.

Plaintiff's statement concerning its contract with Rector & Daly is given by Captain Hackett, its manager, as follows:

" 'Now,' he said, 'I will have to pay cash for this sand and gravel, and I want it cheap,' and I told him I would give it to him cheap for cash, and it was agreed that he would pay cash for it, and I told him he could have the gravel for 80 cents a yard, delivered on the bank or in the bunkers at Vancouver, and sand for 60 cents a yard, a very low price. Then he wanted to know what he could get the rock for, but as I was not in the rock business and had nothing to do with the rock business, I called up Mr. Hume, who was the agent for the Riverside Rock Company, and asked him what I could get crushed rock for, in Vancouver. He said he could let us have crushed rock for 85 cents, at the quarry, per yard, and I told Mr. Rector that I would boat it there, and unload and deliver it at Vancouver for 40 cents per yard, which would make it $1.25 a yard. * * * Along some time in June, he stated that he wanted us to deliver him some crushed rock, I think on Fourth Plain avenue and B street, and that he would be ready for rock at any time, so I called Mr. Hume to find out when he could make deliveries to us on the barges, and Mr. Hume wanted to know where we were going to get our money for this crushed rock. * * * I called Mr. Hume, and we went over to Vancouver and saw Mr. Rector, and he said that he could not pay cash for the crushed rock, but as soon as he got his money off of B street, why he would pay us for the crushed rock, and that he would have to ask us to wait for money until he did get his money from B street, and we asked him what surety we would have if we waited for our money, and he said that he had a bond to the city to pay for all labor and material, a good bond, and mentioned who was on the bond, Mr. Blurock and a man named Sparks, I think, and so, under those conditions, we thought we were perfectly safe in furnishing him the rock and waiting until he got his money off B street, so we began to make deliveries as soon as we could."

The evidence shows that one check given plaintiff, marked "530 yds. rock @ 1.25, 662.50," was credited in payment of crushed rock and not of sand and gravel. It is shown that, in general dealings between plaintiff and Rector & Daly, checks had been so marked as indicating that of which they were payment. Later one of the checks in question was transmitted to plaintiff with a similar notation on its

face. Plaintiff, realizing that an application was intended by Rector & Daly, called Rector up on the telephone and objected, claiming that payments should be upon the sand and gravel account. Rector was evidently evasive in his answer to the objection and, making due allowance for the interest of the witnesses, I am unable to find that Rector consented to a change in the application of the payment.

Capt. Hackett, manager of the Columbia Digger Company, testifies that the payment was applied to the sand and gravel account. The plaintiff did not object to the payment being made by check, but only objected to its being applied in payment for the crushed rock.

[11] Rector & Daly had a right to make application of this payment and, in the manner indicated, had done so. This operated instanter to discharge the liability of the sureties pro tanto and, while plaintiff and Rector & Daly might thereafter, as between themselves, change the application of such payment, it would not operate to revive the extinguished obligation of the defendants. 32 Cyc. 14, 170e1, and 171. A short time before Rector & Daly abandoned the contract to the sureties, plaintiff refused to surrender one of the barges of rock, now in suit, until $1,000 was paid, for which amount one of the checks in question was given. This alone is sufficient to show that it should be applied in part payment of this account.

While not entirely satisfied upon the question of whether there was an actual appropriation by plaintiff of the checks in payment of what plaintiff refers to as "sand and gravel account," in view of the conclusion reached, a finding upon the question is deemed not necessary. While witnesses for the plaintiff testified to such appropriation, the fact that plaintiff did not produce its books; that a statement rendered by it, purporting to be of the account and admitted in evidence, did not show such application; that this statement was rendered for $158 in excess of the amount now claimed, occasioned by the fact that an application of all of these credits in payment of the sand and gravel account would overpay such account, if one were kept separately, to that extent—tends to render doubtful the question of any such actual application.

While not altogether free from doubt, there is less question under the testimony concerning whether plaintiff knew that the payments in question were, in fact, realized under the contract with the city. Capt. Hackett testifies he did not know the payments were from the B street improvement. Rector testifies that he was not told of it. This warrants a finding that he did not know, in spite of the fact that generally payments are made upon such contracts as the work progresses; that certain checks were post dated; that a part of them were marked for crushed rock; and that, as explained by him in his testimony, the agreement was that the rock would be paid for as soon as Rector & Daly got their "money off of B street." Knowing these things would doubtless constitute reasonable grounds for belief upon his part that such payments were from that source, and was enough to put him upon inquiry as to the source from which they were derived; but they are not enough to warrant a finding of actual knowledge on the part of Capt. Hackett in the face of the positive testimony of himself and Rector.

[12] The general doctrine is that:

"The debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according with its own notions of justice." United States v. Kirkpatrick, 9 Wheat. 720, 737 (6 L. Ed. 199).

In Crane v. Pacific Heat & Power Co., 36 Wash. 95, 78 Pac. 460, it was held:

"Where a surety company guarantees the faithful performance of a school building contract, pursuant to the statute, for the benefit of laborers and materialmen, and the contractor pays the money received from the school district to a party who furnished material for the building, and to whom the contractor was indebted, also upon an older unsecured account, the surety is not bound by an application of the school money to the old account, but is entitled to have the same applied on the school contract in discharge of its liability."

In so deciding, the Washington court cited with approval the following from Merchants' Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624:

"It is true, as a general proposition, that a surety cannot direct the application of payments made by his principal, and is bound by any application made by the principal and creditor, or either of them. * * * This rule, as thus broadly stated, applies to cases only where the principal makes the payment from funds which are his own, and free from any equity in favor of the surety to have the money applied in payment of the debt for which he is liable. Hence, where the specific moneys paid to the creditor, and applied on a debt of a principal for which the surety is not held, are the very moneys for the collection and payment of which he is obligated to the creditor, he is not bound by such application, and is equitably entitled to have the moneys applied to the payment of the debt for which he is surety, unless the creditor can show that he has a superior equity to have them applied as they were applied. The adjudged cases are not harmonious on this proposition, but any attempt to here cite and analyze them would be unprofitable. Many of them which are apparently conflicting may be reconciled by observing the distinction between payments made from funds which were the absolute property of the principal and those made from funds affected by an equity in favor of the surety. Upon principle we hold that the proposition we have stated is correct."

The Washington court, after making the foregoing quotation, held that the amounts owing by the school district on the contract—

"were the moneys for the collection and payment of which the surety was obligated * * * to the creditor and the surety is not bound by such application."

The foregoing decision was made upon demurrer to the answer of the surety, in which answer it was alleged that the creditor knew the source from which the money paid was realized, but the decision is not placed upon that ground. Justice, then Judge, Lurton, in a somewhat similar case says:

"Neither does the fact that the officials receiving the payment were aware of the source of the money appear to have been regarded as material." First Nat'l Bank v. Nat'l Surety Co., 130 Fed. 401, 408, 64 C. C. A. 601, 608.

[13] It is the contention of plaintiff that the money, when received by Rector & Daly, became absolutely theirs, freed from any equities whatever on the part of the sureties, and that for the court to appro-

priate it to the payment of the sureties' obligation would be an extreme and wholly unwarranted application of the trust fund doctrine.

In this circuit the rule is laid down as denying a general lien upon the assets of a trustee. Spokane Co. v. First Nat'l Bank, 68 Fed. 979, 16 C. C. A. 81. Though that case was one where the owner was seeking to impress a trust, yet the principle is not unlike where one with an equity seeks to do so. In that case it was said:

"The newer and more equitable doctrine permits him to recover it from any one not an innocent purchaser, and in any shape into which it may have been transmuted, provided he can establish the fact that it is his property or the proceeds of his property, or that his property has gone into it and remains in a mass from which it cannot be distinguished." 68 Fed. 980, 16 C. C. A. 83. In re Gaskill et al. (D. C.) 130 Fed. 235.

The plaintiff in this case does not occupy the position of an innocent purchaser. The want of knowledge may strengthen an existing equity, but it does not create an equity. Speaking generally, the debtor is given the right to make application of payment because the money is his, and it is only equitable that he should do so; but, if the debtor makes no application, the creditor is permitted to, make it, not on account of any equity, as to its application, in him, for, as yet, the money has not become entirely his, but on account of an artificial rule in the interest of simplicity and certainty. If neither the debtor nor the creditor make an application, the court will do so and, in the absence of other equities, will apply it to the debt the debtor had most interest in discharging, which doctrine is itself a recognition that the controlling equity is that of the debtor.

It is contended that the sureties had no equity in this money. The rule has been laid down in this circuit, under a statutory bond, similar to the one in question, that the materialman has a lien (an equitable lien) upon the funds in the hands of the city, not limited to the percentage retained under the terms of the contract, and that the surety who, upon the failure of his principal, discharges the claim of the materialman has a like lien by subrogation, superior to that of his principal's assignee. First Nat'l Bank v. City T. S. D. & S. Co., 114 Fed. 529, 52 C. C. A. 313; Henningsen v. U. S. F. & G. Co., 143 Fed. 810, 74 C. C. A. 484. This is but another way of stating the rule laid down by the Washington court that the money to be paid under the contract was the very money the payment of which to the laborers and materialmen was secured by the bond. If the surety has such a lien upon the money in the hands of the city, he must retain such lien or equity in the money as far as it can be clearly traced, which the courts will protect until it is borne down by some other superior equity, and in a case of the character where, upon principles analogous to those controlling the marshaling of securities, the creditor may not realize upon such security and, over the objection of a bondsman having a potential equity in such security, apply it to an unsecured debt, depriving the bondsman of all benefit from it and hold said bondsman for the secured debt.

[14] Hackett, the manager of plaintiff, testifies that his arrangement with Rector was that the plaintiff was to be paid cash for sand and gravel, and that it was to be paid for the crushed rock "as soon as he

(Rector for Rector & Daly) got his money off of B street," and that he (Hackett) "did not suppose he would get it until it was completed." Cash was not paid for the sand and gravel as it was delivered.

"As soon as he got his money" means "immediately upon getting the money." 1 Words and Phrases, p. 527. It does not mean "as soon as he got *all* his money." It means no more than to say "as soon as he got money," "the money," or "sufficient money." There was nothing in the circumstances to warrant the inference that the entire contract would have to be completed before any money was paid on it, more than to suppose that it would be paid for as the work progressed, and especially would this be true after the receipt by the plaintiff of the first check marked "crushed rock." The presumption would follow that, the contract being that it was to be paid for as soon as the money was received under the contract with the city, that was the source from which the payment, by the marked check, was being made. If plaintiff was mistaken, both in supposing that the money would not be paid until the completion of the contract and in not understanding that the payments made came "off B street," it was a mistake for which the defendant-sureties were in no way responsible; and, whether payments from this source were diverted from that part of the account to which it was understood they would be applied, intentionally or mistakenly, it is nothing for which the sureties were responsible. This being the contract which plaintiff made and to secure the performance of which the bond was given, and it being in substantial accord with what the courts have held to be equitable under such circumstances, there would be no authority in the principals to that contract to change it so manifestly to the sureties' disadvantage, without releasing them, to the extent of the diversion. What the principals could not do directly they should not be allowed to do indirectly.

In First National Bank v. City Trust, Savings Deposit & Surety Co., 114 Fed. 529, 52 C. C. A. 313, the Circuit Court of Appeals for this circuit, upon the question of the right of subrogation of the surety to a lien upon the money held by the city to pay for work under a contract, declined to acknowledge as controlling the decision of the Supreme Court of the state of Washington. Dowling v. City of Seattle, 22 Wash. 592, 61 Pac. 709. The Circuit Court of Appeals held that it was bound by a contrary doctrine. Prairie State Nat'l Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412. Under such circumstances, the court found the case to fall within an exception to the general rule, which rule would render controlling the state's decision on a question as to the public policy of the state.

The Supreme Court has recently held that bonds of the character in question are affected by a public policy:

"The public is concerned, not merely because laborers and materialmen (being without the benefit of a mechanic's lien in the case of public buildings) would otherwise be subject to great losses at the hands of insolvent or dishonest contractors, but also because the security afforded by the bond has a substantial tendency to lower the prices at which labor and material will be furnished, because of the assurance that the claims will be paid." Equitable Surety Co. v. United States, etc., 234 U. S. 448, 34 Sup. Ct. 803, 58 L. Ed. 1394, decided June 8, 1914.

[15] The state has power to regulate rights in its soil; to give a lien for labor and material entering into an improvement; to deny a lien where the soil is that of a municipal corporation; in such case to provide a bond in the place of the lien; to declare the purpose and effect of such arrangement and the equities and rights growing out of it.

[16] While the question of the superior right or equity involved may be said, speaking broadly, to be one of general law which the federal court will decide for itself, despite the holding of the state court, yet such statutory bonds affected by such public policy, the rights and equities incident thereto are likewise so affected; and, while the declaration of the highest court of the state concerning such rights, equities, and policy may not involve the construction of a state law, in the sense of its literal interpretation, yet it is considered that such decision is entitled to more than ordinary consideration, if it is not absolutely controlling, where, as here, it is not directly opposed to any higher federal precedent. The rule is stated as follows:

"Questions of public policy, as affecting the liability for acts done or upon contracts made and to be performed, within one of the states of the Union— when not controlled by the Constitution, laws, or treaties of the United States, or by the principles of the commercial or mercantile law or of general jurisprudence, of national or universal application—are governed by the law of the state as expressed in its own Constitution and statutes, or declared by its highest court." Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry., 70 Fed. 201, 17 C. C. A. 62, 30 L. R. A. 193, affirmed 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84.

The authorities are not uniform upon the questions involved in this case. Thacker v. Bullock Lbr. Co., 140 Ky. 463, 131 S. W. 271, and People v. Powers, 108 Mich. 339, 66 N. W. 215, are decisions directly opposed to the conclusion reached, but the weight of authority supports it. Many of the cases which have been cited are not to the contrary, as appears upon a careful examination.

In Grafton v. Reed, 34 W. Va. 172, 179, 12 S. E. 767, 769, relied upon by the plaintiff, the court held that the sureties for the year 1879 could not object to the application of payment made by the plaintiff—

"unless they had satisfactorily shown that the money with which said receipts and vouchers (the credits) were procured was money collected on tax tickets, licenses, etc., which went into his hands for the year 1879, or that the plaintiff was informed as to the source from which the money was derived with which said vouchers were obtained."

This is far from holding that both the source of the credit must be shown and that the plaintiff knew of its being so derived.

In Schwartz v. Gerhardt, 75 Pac. 698, 44 Or. 425, it was held that a trust fund does not lose its identity though the money changes semblance, and in whatsoever form it may have assumed a trust still attaches, whether it remains in the hands of an original trustee, or goes into other hands, especially if the other has taken with knowledge of the trust relation.

The determination reached in defendants' favor finds support in the following cases: United States v. January, 7 Cranch, 572, 3 L. Ed. 443; Jones v. United States, 7 How. 681, 12 L. Ed. 870; United States v. Kirkpatrick, 9 Wheat. 170, 171, 6 L. Ed. 199.